Page 47

that it reasonably conveys the required information, and it must afford a reasonable time for those interested to make their appearance" Mullane Vs Central Hanover Bank and Trust Co., 70 S. Ct. 652 (1950) at 657

The Court later explained that "[t]he purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for an impending hearing" Memphis Light, Gas and Water Division Vs Craft, 436 U.S. 1, 14, 98 S. Ct. 1554, 1563 56 L. Ed 2d 30 (1978)

The defendants actions,

Page 48

as alleged, by which the plaintiff was not allowed anytime, whatsoever, to receive the notice of the Memorandum Of Decision let alone to respond to it, due to the defendants over ambition to do anything, fair or foul, that would make the plaintiff, Ben. Gyadu, lose the title of his home and property absolutely to Bella Vista Condos <u>before</u> the plaintiff, Ben. Gyadu, ie. the defendant in the action : Bella Vista Condos Vs Ben. Gyadu, even had any chance to receive the notice of the Memorandum of Decision, upon which the defendant issued the

Page 49

Ejectment Order, so that by the time the
defendant, Ben. Gyadu, received the notice
of the decision, absolute title had already
been conferred upon the plaintiff, Bella Vista
Condos and therefore the defendant, Ben. Gyadu
at that juncture could not do anything what
ever to correct or change anything that might
be wrong with the decision let alone to take
action that might be wrong to warrant re-
with the decision
sing the decision to save his home and property
represent not only a violation of pFourteenth
Amendment Rights of defendant, Ben. Gyadu

Page 50

alleged, but such actions represent a MALI-
CIOUS, CALLEOUS, WICKED, DISHONEST acts
done in WANTON DIS-REGARD to laws, CONSTI-
TUTIONAL or otherwise, just to cause harm
to the defendant, BEN-GYADU, as it did occur;
the defendant, Ben-Gyadu, is now a VAGABOND,
HOMELESS, as a result of the actions of the
defendant of the action in question.

Till to date the plaintiffs
possessions are still being seized by Attorney
Melchionne and Bella Vista Knobs as a result of
tricks, deception and coup-d'e-tat kind of dishones[t]

Page 51

act that was played upon the plaintiff
on the 30th of Nov, 2001, when the plaintiff
was removing his possessions during the day
he was ejected UNLAWFULLY from his home
and property.

    At the middle of the
packing of the plaintiff's possessions from the
plaintiff's home and property, Attorney Melchionne
who was with the plaintiff when the plaintiff
was at the attick dis-appeared.

    The next thing was a call from
Attorney Melchionne and his team asking the
plaintiff to come down and see some thing.

Page 52

Because the plaintiff had not finished removing his possessions, he replied that he would soon finish-up and come down.

Attorney Melchionne and his team, however, insisted that the plaintiff should interrupt or suspend the packing and come down immediately to see something and go right back to continue the packing of his possession.

Because Attorney Melchionne. and his team were only trying to get the plaintiff out of the building and lock it up and leave, regardless of the fact that the plaintiff

Page 53

had not finished removing his possessions from the building, just when the plaintiff stepped out of the building, Attorney Melchronne locked up the doors behind the plaintiff and plaintiff was not allowed back in the building to continue to remove his possessions as he was told.

What the plaintiff was asked to come down immediately to see happened to be nothing but a second inventory form which was filled up and so the plaintiff had to sign it as he did with the initial one.

When the plaintiff finished signing

Page 54

the form and headed back to the building to continue removing his possessions but Attorney Melchionne would not allow the plaintiff back in the building, the plaintiff was shocked beyond description at the tricks and dis-honest acts that were played upon him and the resultant eminent loss of his possessions right before his own eyes, not to mention the eminent exposure of his private life before the public with its consequential damages This dishonest act initiated a heated argument between the plaintiff and Attorney Melchionne but nothing the plaintiff did or say made

Page 55

any difference to Attorney Melchionne to allow the plaintiff back in the building to remove his possessions          Consequently, till to date the plaintiff's possessions have been seized and or with-held by Attorney Melchionne and Bella Vista Condos exposing the plaintiff's life to the general public and violating the plaintiff's rights under the Privacy Act

This implies the defendants alleged ambitious actions have caused the plaintiff a further Consequential damages due to a violation of his 4th Amendment Rights

Page 56

E

## DEPRIVATION OF EQUAL PROTECTION OF LAWS

The U.S. Supreme Court holds:
                                        If the State

legislature pass a law discriminating against

any portion of its citizens, or it fails to enact

provisions equally applicable to every class

for the protection of their person and property, it

will be admitted that the State does not afford

the equal protection. But if the Statute show

no discrimination, yet in its judicial tribunals

one class is unable to secure that enforcement

of their rights and punishment for their infraction

which is accorded to another - - - - - - - - the

Page 57

State has not afforded to all its citizens the equal protection of the Laws" Monroe Vs Pape, 81 S.Ct 473 (1961) at 478

The defendants actions, as alleged, where provisions of Laws were not abided by so as to make it possible to issue the Ejectment Order, Constitute a violation of Equal Protection of Laws of which a reasonable Official would have noticed or known, causing the plaintiff resultant problems and Irreparable Damages.

Plaintiff could not exercise his legal rights under Sec. 49-15 of the Ct Gen. Statute

Page 58

Annotated to Open or Set Aside the Judgement as
a result of the defendants acts, as alleged.
            Infact due to the defendants
alleged actions, the Chief Clerk and the Deputy
Chief Clerk of the Superior Court Of Waterbury
REFUSED to accept for filing the plaintiff's Motions
to Open/Set Aside Judgement.

E
__DEFENDANT NOT SHIELDED BY ANY IMMUNITY__
        F(1)
      __Qualified Immunity Not Applicable To__
__Defendants Acts As Alleged__
                The defendant's alleged
acts by which the defendant (a) COLLABORATED
and CONSPIRED with Attorney Melchienne to

Page 59

make it possible for the defendant to issue an
within 11 minutes or less
Execution Order against a huge file of seven

separate voluminous files, that required the defendant

to go through thoroughly and carefully each and every

one of the seven volumes to make sure that

the conditions that are supposed to be met before

an Execution Order is issued, are met, without

making sure that the demands that should be

met before issuing the Execution Order were met

(b) abandoned the specific demands that were

supposed to be met before an Execution Order

is issued and thereby short circuited the Due Process

Page 60

Of Law so as to make it possible to issue the
Order before the defendant, Ben. Gyadu, had
any chance to receive the notice of the
Memorandum Of decision and filed papers that
would make her lawless acts abundantly glaring
that she could not attempt to conceal the lawless
actions and thereby prevent her from issuing
the Ejectment Order and thus torpedoe the
Malicious planned strategy that was intended
to deprive the defendant, Ben. Gyadu, of his
home and property, regardless of the demands of
laws to the contrary, the defendants actions were

Page 61

DELIBERATE intended to achieve a MALICIOUS

goal.        Hence the defendants actions, as alleged

were highly SUBJECTIVE but NOT OBJECTIVE

to warrant the defendant a Qualified

Immunity.        The defendant must therefore

be made to answer the charges or the

complaint against her to, at least, discourage

such lawless actions in the near future against

innocent people, under colour of State law.

        This is not to mention the fact that

the defendants actions, as alleged, deprived the

Page 62

plaintiff his Constitutionally protected appeal

rights

The U.S. Supreme Courts holds the ff:

For a Constitutional right

to be clearly established, its contours "must

be sufficiently clear that a reasonable

official would understand that what he is

doing violates that right. This is not to say

that an official action is protected by

qualified immunity unless the very action

in question has previously been held unlawful,

but it is to say that in light of pre-existing

Page 63

how the unlawfulness must be apparent"

Hope vs Pelzer, 122 S. Ct. 2508 (2002) at 2515

The defendants actions were

WILLFUL, MALICIOUS, WANTON and DELIBERATE

Defendant is therefore not shielded by

Qualified Immunity.

F(2)

DEFENDANT NOT SHIELDED BY JUDICIAL IMMUNITY

The U.S. Supreme Court holds:
Functional

approach to judicial immunity from damages

liabilities did not require that absolute immu-

nity be extended to court reporters as being part

Page 84

of judicial function, Court reporters did not

exercise discretionary judgement

        To determine whether doctrine

of judicial immunity applies to officials other

than judges, Court determines whether

performance of function requires exercise of

discretionary judgement." Antoine Vs Byers

and Anderson, Inc. 113 S.ct. 2167 (1993)

at 2171

        The defendants function in

question which is specified and specific does

not require any exercise of discretionary

judgement. Infact if the function of Court

Page 65

reporters does not qualify them to be shielded by Judicial Immunity, then the function of the defendant does not, in any way, qualify the defendant to be shielded by Judicial Immunity.

Hence the defendant is NOT shielded by Judicial Immunity and must be made to stand trial of her actions which have caused the plaintiff all kinds of problems and Irreparable Damages of anybody's guess.

9. COUNSELS REPEATED DECEPTIVE, MIS-LEADING MANEUVRES FOR A DEFENSE AND HENCE COUNSEL'S REPEATED BAD-FAITH PLEADINGS

9(1) Counsels claim under

Page 66

1(f) represents a DECEPTIVE, MIS-LEADING

defense and hence a BAD-FAITH pleading

and must be denied the relief sought accordingly

The Writ of Certiorari to the

U.S. Supreme Court does not have anything to

do with the referenced action which was dismi-

ssed with other actions, without their merits
*by the Appellate Court*

except to punish the Indigent plaintiff for not

having $8,017 to pay its monetary sanctions to

Bella Vista Condos to cover appeal expenses of

plaintiff's appeal of denial of plaintiff's Motion

To Dismiss which the Appellate Court declared that

Page 67

it was not a final judgement to warrant its

appeal

        The Writ of Certiorari was with

respect to that action but not with respect

to the appeal of the VOID final judgement

           The State Appellate Court would

never have filed that appeal if it was

the same action that went before the U.S. Supreme

Court

        Counsel is attempting to use deceptive

maneuvers to mis-lead the Court to achieve a

desired outcome to deprive the plaintiff of justice

due him.

        Plaintiff prays the Court would not allow such