UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BEN GYADU | : | CIVIL NO. 3:02-CV-01271 (AWT) |
| *Plaintiff* | : | |
| | : | |
| v. | : | |
| | : | |
| MAURA O'CONNELL | : | |
| *Defendant* | : | FEBRUARY 24, 2005 |

## **LOCAL RULE 56(A)(1) STATEMENT**

Pursuant to Local Rule 56(a)(1), the defendant identifies the following material facts that are not in dispute for the purpose of ruling on the present motion for summary judgment.

1.  The defendant, Maura O'Connell ("Ms. O'Connell"), is an Assistant Clerk for the State of Connecticut Superior Court, Judicial District of Waterbury.  Affidavit of Maura O'Connell ¶ 2 (hereinafter "O'Connell Aff.") (copy attached as exhibit 1).

2.  Ms. O'Connell is a 1987 graduate of the University of Bridgeport School of Law, with honors, and also received her Bachelors of Arts degree from that university. Id. ¶ 3.

3.  Ms. O'Connell is a member of the bar of the State of Connecticut. Id.

4.  Ms. O'Connell was appointed Assistant Clerk for the Superior Court, Judicial District of Waterbury in 1993 and has served in that capacity from that time through the present. Id. ¶ 5.

5.  Ms. O'Connell's duties at the time that the Execution of Ejectment was issued in this case included taking care of inquiries in family civil matters and processing all post-judgment civil remedies, including bank executions and Executions of Ejectment for mortgage foreclosures. Id. ¶ 6.

6. Ms. O'Connell was assigned the duties of handling executions by the Chief Clerk of the Superior Court of the Judicial District of Waterbury and he informed her about the relevant State statutes and Connecticut Practice Book provisions. Whenever she had a question or something came up, she asked the Chief Clerk or Deputy Chief Clerk for guidance. Id. ¶ 7.

7. The procedure followed before issuing Executions of Ejectment in mortgage foreclosure proceedings is to check various matters, including the following:

   a.) that a judgment of foreclosure has entered, and the date of the last judgment;

   b.) that more than 24 hours has passed since the last law day, the date assigned for redemption of the property;

   c.) that no appeal is pending from the judgment of foreclosure and that the time for appeal has passed;

   d.) that no motion to reopen has been filed, or, if one has that it was denied;

   e.) that no stay of execution is in effect;

   f.) that an order of possession in favor of the party seeking execution has been entered by the Court;

   g.) whether the party against whom the execution is to be issued has exercised the equity of redemption by paying the mortgage debt, and, if not, whether any encumbrancer has redeemed the property; and

   h.) that the information contained in the form provided by the attorney for the plaintiff is correct, including the date the lis pendens was recorded, the correct

spelling of the name of the party entitled to possession, and the address and legal description of the property involved.  Id. ¶ 8.

8.  If those conditions are met, the Execution of Ejectment is issued.  Id.

9.  To the best of Ms. O'Connell's knowledge, she followed the procedure set forth in paragraphs 7-8 above in the case which is the subject of the present civil action, Bella Vista Condominium Association. v. Benjamin Gyadu, State court no. CV-94-0120500-S.  Id.  That case was a condominium lien foreclosure action brought against Mr. Gyadu in 1994 by the Bella Vista Condominium Association ("Bella Vista") alleging, inter alia, that Mr. Gyadu had failed to pay his condominium association fees.  Affidavit of Eugene Melchionne ¶¶ 3-4 (hereinafter "Melchionne Aff.") (copy attached as exhibit 2).  Since the date that action was filed, Mr. Gyadu has not paid his condominium association fees or his mortgage on the subject condominium unit.  Id. ¶ 4.

10. To the best of Ms. O'Connell's knowledge, she determined that the requirements set forth in paragraphs 7-8 above were satisfied before issuing the Execution for Ejectment.  O'Connell Aff. ¶ 9

11.  A Judgment of Strict Foreclosure was entered against Mr. Gyadu on January 4, 2000, and notice of that judgment was issued.  Id.

12.  Mr. Gyadu's appeal of that foreclosure judgment was dismissed and he exhausted all appellate procedures to challenge that judgment, including seeking a writ of certiorari to the United States Supreme Court.  Memorandum of Decision in Bella Vista Condo v. Gyadu at 1 (attached as Exhibit C to O'Connell Aff.).

13. After Mr. Gyadu had exhausted his appellate remedies, the court granted Bella Vista's motion to reopen the foreclosure judgment and set August 28, 2001 as the law day for Mr. Gyadu's property. Id.

14. Before the law day arrived, Mr. Gyadu filed several motions in the Superior Court challenging that court's granting Bella Vista's motion to reopen, including: (1.) a motion for relief of judgment; (2.) two separate motions to stay the proceedings; (3.) a motion to set aside; (4.) a motion for temporary injunction to keep the law days from running; and (5.) a motion to set aside the denial of his motion for relief of judgment, two stay motions and the motion to set aside. Id. at 1-3.

15. That court denied all of Mr. Gyadu's motions. Id.

16. During this time period, Mr. Gyadu also filed two motions in the federal district court to stay the state court proceedings. Id. at 2. The district court denied both motions. Id.

17. Mr. Gyadu did not redeem the property by the law day. Id.

18. None of the other encumbrancers redeemed the property on their respective law days. Id.

19. Absolute title vested in Bella Vista on or about September 4, 2001, upon the failure of Mr. Gyadu and the other encumbrancers to redeem the property. Id.

20. On or about September 17, 2001, after the Judgment of Strict Foreclosure had been entered against Mr. Gyadu and the law days had passed, Bella Vista's counsel, Eugene Melchionne ("Attorney Melchionne"), prepared the Execution of Ejectment form. Melchionne Aff. ¶ 5.

21. Attorney Melchionne filed the Execution for Ejectment form on or about September 24, 2001 by handing it to the courtroom clerk before the hearings on the calendar commenced. Id. ¶ 6.

22. The file stamp for the Superior Court at Waterbury is in the clerk's office. O'Connell Aff. ¶ 11. There is no file stamp in the court room. Id.

23. An Execution for Ejectment filed in the court room probably would not have been file stamped at the time of filing because there is no file stamp immediately available. Id.

24. If Ms. O'Connell receives an Execution for Ejectment form that has not been file stamped, she file stamps the form after she signs it. Id.

25. On October 17, 2001, Attorney Melchionne called the clerk's office concerning the signing of the Execution for Ejectment. Melchionne Aff. ¶ 8. He was informed that the presiding judge was still considering Mr. Gyadu's motions and would not allow the execution to leave the courtroom until Mr. Gyadu's motions were decided. Id.

26. On November 1, 2001, the Connecticut Superior Court issued a Memorandum of Decision rejecting Mr. Gyadu's argument that the court had lacked jurisdiction during the period prior to Mr. Gyadu's law day because Mr. Gyadu had sought to remove the action to federal district court. Memorandum of Decision in Bella Vista Condo v. Gyadu at 4 (attached as Exhibit C to O'Connell Aff.). Based on that conclusion, the court held that "[c]onsequently, there was no stay in effect to prevent the state court action from proceeding as scheduled" and that "[s]ince this court had jurisdiction when it denied the defendant's motions on August 27, 2001, and there was

5

no order staying the state proceedings or preventing the law days from running as scheduled, the defendant's motion to set aside the orders is denied as moot." Id.

27. A copy of the court's Memorandum of Decision was mailed to Mr. Gyadu on November 1, 2001. Id. at 1.

28. Judgment did not enter based on the court's November 1, 2001 Memorandum of Decision because it had already entered on January 4, 2000. O'Connell Aff. ¶ 9.

29. That decision indicated that there was no period of time or waiting period required by law following the issuance of the Memorandum of Decision before the Execution for Ejectment could lawfully issue and that was consistent with Ms. O'Connell's knowledge and understanding of the law. Id.

30. At some time after the court issued its November 1, 2001 decision, Ms. O'Connell initiated the procedure followed before issuing Executions of Ejectment described in paragraphs 7 and 8 above. O'Connell Aff. ¶ 8-9.

31. To the best of her knowledge, Ms. O'Connell believes she followed the procedure and determined that the requirements had been met for issuance of an Execution of Ejectment. Id. ¶ 9.

32. Before issuing the Execution of Ejectment, Ms. O'Connell checked with the Deputy Chief Clerk, one of her supervisors, to ensure that it was lawful. Id. ¶ 9. He agreed that the Execution of Ejectment was lawful and should issue. Id.

33. On November 2, 2001, Ms. O'Connell signed and issued the Execution of Ejectment. Id. ¶ 9.

34. Ms. O'Connell does not recall Attorney Melchionne coming to the clerk's office on the day she signed the Execution of Ejectment.  Id. ¶ 11.

35. Attorney Melchionne did not deliver the Execution of Ejectment on or after November 1, 2001 because it had already been filed with the court.  Melchionne Aff. ¶ 9.

36. Ms. O'Connell did not prevent Mr. Gyadu from taking any appeals or seeking any other appellate relief and she lacked the power to do so.  O'Connell Aff. ¶ 12.

37. Ms. O'Connell has never personally refused a filing by Mr. Gyadu and has no knowledge of the Chief Clerk refusing to accept any filings from Mr. Gyadu.  Id. ¶ 13.

38. Court records show that after the Memorandum of Decision of November 1, 2001, and the Execution of Ejectment of November 2, 2001 were issued, Mr. Gyadu filed:

   a.) a motion for rehearing on November 16, 2001 (dated November 15, 2001), which was denied by Judge West on November 19, 2001;

   b.) a motion to set aside Execution for Ejectment, filed November 21, 2001 (dated Nov. 20, 2001) and denied by Judge West on November 27, 2001;

   c.) a motion for a stay of execution pending a decision by the appellate court filed on November 27, 2001 (dated Nov. 26, 2001) and denied by Judge West on November 27, 2001;

   d.) a motion for temporary restraining order from issuing the Execution for Ejectment for mortgage foreclosure filed, with accompanying affidavit, on November 27, 2001 (dated November 26, 2001) and denied by Judge West on November 27, 2001;

  e.) a motion for extension of time to appeal the court's ruling filed on December 10, 2001 (dated Dec. 7, 2001), which was granted by Judge West "limited to the time permitted by statute or practice book rules," with notice hand delivered to the pro se defendant, Mr. Gyadu, on December 10, 2001; and

  f.) an application for waiver of filing fee for a motion to open or modify, filed the following year, on December 17, 2002, and denied by the court on December 17, 2002, with the statement that "The court does not have jurisdiction to grant the requested relief as the judgment has been executed upon and more than 120 days have lapsed since the entry of judgment." Id. ¶ 14.

 39. The filings set forth in paragraph 31 challenged, or sought the opportunity to challenge, the court's November 1, 2001 Memorandum of Decision and the Execution of Ejectment. Id. ¶ 15.

 40. Despite being granted an extension of time to file an appeal from the November 1, 2001 Memorandum of Decision, Mr. Gyadu did not seek to do so.

 41. Ms. O'Connell does not recall talking with Attorney Melchionne concerning the foreclosure action involving Mr. Gyadu. Id. ¶ 16.

 42. Ms. O'Connell had no role in or authority over the manner in which the Execution of Ejectment was executed and no knowledge of what occurred other than what Mr. Gyadu alleged in his complaint. Id. ¶ 17.

 42. Ms. O'Connell had no knowledge of, aside from Mr. Gyadu's allegations in his complaint, and no involvement with any difficulties Mr. Gyadu may have had in accessing his personal property after he was ejected from the condominium. Id. ¶ 18.

43. The time it takes to conduct the necessary review and issue an Execution of Ejectment varies from under 24 hours to a number of weeks, depending on the clerk's office's workload and various other factors.  Id. ¶ 19.

44. Ms. O'Connell did not treat Mr. Gyadu any differently from anyone else in his legal situation and did not discriminate against him in any way or on any basis.  Id. ¶ 20.

45. Ms. O'Connell did not conspire with Attorney Melchionne or any other person or entity to deprive Mr. Gyadu of any legal right.  Id. ¶ 21.

46. Ms. O'Connell's actions were in no way motivated by malice against Mr. Gyadu.  Id.

47. Ms. O'Connell believed that all of her actions challenged in this action were lawful and did her best to comply with all applicable laws.  Id. ¶ 21.

  DEFENDANT

  MAURA O'CONNELL

  RICHARD BLUMENTHAL
  ATTORNEY GENERAL

BY: _____
  Robert J. Deichert
  Assistant Attorney General
  Federal Bar No. ct24956
  55 Elm Street
  P.O. Box 120
  Hartford, CT  06141-0120
  Tel: (860) 808-5020
  Fax: (860) 808-5347
  Robert.Deichert@po.state.ct.us

**CERTIFICATION**

I hereby certify that a true and accurate copy of the foregoing Memorandum in Support of Motion for Summary Judgment was served in accordance with Rule 5(b) of the Federal Rules of Civil Procedure by first-class mail, postage prepaid, on this 24th day of February, 2005 to:

Ben Gyadu
P.O. Box 4314
Waterbury, CT 06704

_____
Robert J. Deichert
Assistant Attorney General