2 of 10 DOCUMENTS

ANOTO AB, Plaintiff, v. ORAL F. SEKENDUR, Defendant.

No. 03 C 4723

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

2004 U.S. Dist. LEXIS 21715

October 22, 2004, Decided
October 28, 2004, Docketed

**PRIOR HISTORY:** Anoto AB v. Sekendur, 2004 U.S. Dist. LEXIS 7950 (N.D. Ill., May 4, 2004)

**DISPOSITION:** Anoto's Motion for Summary Judgment of Noninfringement and Motion for Summary Judgment of Invalidity for Lack of Enablement granted, and Sekendur's Motion for Summary Judgment for Failure to State a Cause of action and For Infringement denied. Anoto's Motion to Strike denied as moot.

**LexisNexis(R) Headnotes**

**COUNSEL:** [*1] For AB ANOTO, Plaintiff: Gerson S. Panitch, David Brian Kacedon, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, DC; John M. Heaphy, Vurdelja & Heaphy, Chicago, IL; Diane Green-Kelly, Mayer, Brown, Rowe & Maw LLP, Chicago, IL.

For ORAL F SEKENDUR, Defendant, Pro Se, Chicago, IL.

For FEDERAL EXPRESS CORPORATION, PILOT CORPORATION OF AMERICA, Third-party defendants: George N. Vurdelja, Jr., John M. Heaphy, Griswold L. Ware, Vurdelja & Heaphy, Chicago, IL.

For AB ANOTO, Counter-defendant: Gerson S. Panitch, David Brian Kacedon, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, DC; John M. Heaphy, Vurdelja & Heaphy, Chicago, IL; Diane Green-Kelly, Mayer, Brown, Rowe & Maw LLP, Chicago, IL.

For LOGITECH, INC., Counter-defendant: Diane Green-Kelly, Mayer, Brown, Rowe & Maw LLP, Chicago, IL.

For ERICSSON MOBILE COMMUNICATIONS, Counter-defendant: Gustavo G. Siller, Jr., Bryan Paul Sugar, Brinks, Hofer, Gilson & Lione, Chicago, IL.

For 3M COMPANY, Counter-defendant: George N. Vurdelja, Jr., John M. Heaphy, Vurdelja & Heaphy, Chicago, IL; Griswold L. Ware, Vurdelja & Heaphy, Chicago, IL.

For MEAD CORPORATION, THE, Counter-defendant: Diane [*2] Green-Kelly, Mayer, Brown, Rowe & Maw LLP, Chicago, IL.

**JUDGES:** JAMES F. HOLDERMAN, District Judge.

**OPINIONBY:** JAMES F. HOLDERMAN

**OPINION:**

**MEMORANDUM OPINION**

JAMES F. HOLDERMAN, District Judge:

This Memorandum Opinion explains the reasons for this court's Order of October 22, 2004 (Dkt. No. 133). That October 22, 2004 Order ruled on three summary judgment motions then pending before this court: Plaintiff Anoto AB's ("Anoto") Motion for Summary Judgment of Noninfringement filed on June 30, 2004 (Dkt. No. 75); Anoto's Motion for Summary Judgment for Invalidity for Lack of Enablement filed on August 30, 2004 (Dkt No. 104); and Defendant Oral F.

Sekendur's ("Sekendur") Motion for Summary Judgment for Failure to State a Cause of Action and For Infringement filed on September 24, 2004 (Dkt. No. 113). For the following reasons, Anoto's Motion for Summary Judgment of Noninfringement (Dkt. No. 75) and Motion for Summary Judgment of Invalidity for Lack of Enablement (Dkt. No. 104) were granted, and Sekendur's Motion for Summary Judgment for Failure to State a Cause of action and For Infringement (Dkt. No. 113) was denied. n1

> n1 Sekendur's Motion for Summary Judgment for Failure to State a Cause of Action and For Infringement (Dkt. No. 113) was denied because of Sekendur's failure to comply with Local Rule 56.1(a) in that accompanying 56.1(a)(3) Statement was generally without any citation to evidence, and where evidence was cited that evidence in several instances was not presented in the record for examination by the court. Furthermore, upon review of that motion, this court cannot discern any evidence that would support the granting of summary judgment in favor of Sekendur. See infra Section II. Accordingly, Anoto's Motion to Strike (Dkt. No. 120) is moot.

[*3]

JURISDICTION

This court has subject matter jurisdiction over each of the claims of Anoto's complaint under the provisions of 28 U.S.C. §§ 1331, 1332, 1338(a), 1338(b) and 1367(a). Furthermore, as this court previously decided on October 21, 2003 (Dkt. No. 22), an actual controversy exists for Anoto's declaratory judgment claims of noninfringement and invalidity based on Sekendur's specific, repeated threats to sue Anoto and its customers. Arrowhead Indus. Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 736 (Fed. Cir. 1988). Furthermore, Sekendur's filing of a counterclaim affirmatively accusing Anoto of direct, contributory and induced infringement establishes an actual controversy. See Trio Prods, Corp v. Anderson Co., 147 F.2d 721, 722 (7th Cir. 1945).

BACKGROUND

This case arises out of a four-count complaint filed by Anoto on July 8, 2003 against Sekendur. The complaint alleged tortious interference with existing and prospective business relationships in Count I and Lanham Act violations in Count II. Count III of the complaint requested a declaratory judgment that neither Anoto nor its licensed manufacturer have either [*4] directly, contributorily, by inducement, or otherwise, infringed on Sekendur's U.S. Patent No. 5,852,434 ("'434 patent") and that the '434 patent is invalid for failure to comply with one or more federal laws or regulations. Finally, Count IV requested a declaratory judgment that the '434 patent was invalid based on Sekendur's misuse of the patent.

Generally, Sekendur's '434 patent is a "digitizer and absolute position determination device for indicating the instantaneous position and movement of a stylus on a surface[,]" ('434 patent, Abstract) "such as might be used for determining the position and/or movement of a pen/pencil on paper" ('434 patent, col. 1, 11-13). Sekendur has alleged in his Amended Counterclaim (Dkt. No. 32), and in numerous communications to Anoto and Anoto's customers, that Anoto infringes on the '434 patent either directly, by contributing or by inducement (Dkt No. 32, P 21).

All products using Anoto technology ("Anoto Enabled Products") inherently include the Anoto Dot Pattern and/or an Anoto-Programmed Processor. (Anoto's 56.1(a)(3) Statement for Noninfringement, P 8.) Anoto licenses the Anoto Dot Pattern to its paper customers who print the Anoto Dot [*5] Pattern on paper. (Id., P 9.) Therefore, all Anoto Enabled paper products include a portion of the Anoto Dot Pattern. (Id.) Anoto provides the Anoto Processing Algorithm for inclusion within the processors of digital pens supplied by Anoto pen partners, (Id., P 10.) Therefore, each Anoto-Enabled pen product includes an Anoto-Programmed Processor. (Id.) On May 5, 2004, after reviewing the memoranda submitted by the parties, this court issued a Memorandum Opinion and Order (Dkt. No. 50) construing the disputed claim terms. The following relevant disputed claim terms are requirements of each claim in the '434 patent and were construed for the reasons set forth in this court's May 24, 2004 Memorandum Opinion (Dkt. No. 50) as follows:

1. Coding Means

In patent '434, independent claims 1, 10 and 16 recite the term "coding means." The claim term "coding means" in the '434 was construed to mean:

> One of the three patterns disclosed in Figs. 1-5 of the '434 patent, and structural equivalents thereof. Structural equivalents must 1) not have any portion of a code defining an X-Y coordinate used to define any other X-Y coordinate; 2) be large enough so that stylus tilt [*6] is not a factor in determining coordinates; 3) be large enough to permit a sampling rate significantly less than the rate of Bennett

et al.; 4) be large enough to allow for much less processing power than that of Bennet et al.; and 5) be arranged so that the data making up each coordinate code is unique from the data making up each other coordinate code.

(Dkt. No. 50 at 9-10.) 2. Processing Means

In patent '434, independent claims 1, 10 and 16 each recite a "processing means." The claim term "processing means" in the '434 patent was construed to mean:

> A computer, processor, PC board, microcomputer or a microprocessor and structural equivalents thereof. Structural equivalents must 1) have a sampling rate significantly less than Bennett et al.; 2) require much less processing power than Bennett et al.; 3) not detect every point in the path of the stylus, but rather use techniques so that points can be intentionally skipped and processing power thereby reduced; and 4) be capable of coordinate detection without having to compensate for stylus tilt

(Dkt. No. 50 at 20.)

STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is [*7] proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." All evidence must be viewed in the light most favorable to the nonmoving party; the court's function is not to weigh evidence or make credibility determinations, but to determine whether there is an issue for trial. Id. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986); Payne v. Pauley, 337 F.3d 767, 770 (7th Cir. 2003). "The court has one task and one task only: to decided, based on the evidence of the record, whether there is any material dispute of fact that requires a trial." Payne, 337 F.3d at 770 (quoting Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994)). A party who bears the burden of proof on a particular issue... may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. Celotex Corp, v. Catrett, 477 U.S. 317, 324, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). [*8]

In the Northen District of Illinois, pursuant to Local Rule 56.1 n2, a party moving for summary judgment must submit a statement of material facts (hereinafter 56.1(a)(3) Statement), comprised of short numbered paragraphs with citations to admissible evidence, in support of a summary judgment motion "Failure to submit such a statement constitutes grounds for the denial of the motion." N.D. Ill. L.R. 56.1(a). A party moving for summary judgment against a party proceeding pro se must comply with Local Rule 56.2, which requires the moving party to serve and file a Notice to Pro Se Litigants Opposing Summary Judgment" in the form indicated by that rule. N.D. Ill. L.R. 56.2. n3

> n2 Local Rule 56.1 provides:
> (a) Moving Party. With each motion for summary judgment filed pursuant to Fed.R.Civ.P. 56 the moving party shall serve and file -
> > (1) any affidavits and other materials referred to in Fed.R.Civ P 56(e);
> > (2) a supporting memorandum of law; and
> > (3) a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law...
> The Statement referred to in (3) shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph. Failure to submit such a statement constitutes grounds for denial of the motion.
> If additional material facts are submitted by the opposing party pursuant to section (b), the moving party may submit a concise reply

Case 3:02-cv-01271-AWT    Document 69-2    Filed 03/28/2005    Page 4 of 12

Page 4
2004 U.S. Dist. LEXIS 21715, *

in the form prescribed in that section for a response. All material facts set forth in the statement filed pursuant to section (b)(3)(B) will be deemed admitted unless controverted by the statement of the moving party.
(b) Opposing Party. Each party opposing a motion filed pursuant to Fed.R.Civ.P. 56(e) shall serve and file -
    (1) any opposing affidavits and other materials referred to in Fed.R.Civ.P. 56(e);
    (2) a supporting memorandum of law; and
    (3) a concise response to the movant's statement that shall contain:
    (A) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and
    (B) a statement, consisting of short numbered paragraphs, of any additional facts. All material facts set forth in the statement required of the moving party will be deemed admitted unless controverted by the statement of the opposing party.

[*9]

n3 Anoto complied with Local Rule 56.2 with respect to both of its summary judgment motions. (Dkt. Nos. 76, 102.)

A party opposing summary judgment must comply with Local Rule 56.1(b) by filing a response to the 56.1(a) Statement. N.D. Ill. L.R. 56.1(b)(3)(A). That response (hereinafter "56.1(b)(3)(A) Response), must contain: "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." N.D. Ill. L.R. 56.1(b). "Thus, a general denial is insufficient to rebut a movant's factual allegations." Malec v. Sanford, 191 F.R.D. 581, 585(N.D.Ill. 2000). Furthermore, "[a] mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." Smith v. Lamz, 321 F.3d 680, 683 (7th Cir. 2003); see also Glaverbel Societe Anonyme v. Northlake Marketing & Supply. Inc., 45 F.3d 1550, 1562 (Fed. Cir. 1995) (affirming summary judgment because "there must [*10] be sufficient substance, other than attorney argument, to show that the issue requires trial.") "Local Rule 56.1 's enforcement provision provides that when a responding party's statement fails to controvert the facts as set forth in the moving party's statement in the manner dictated by the rule, those facts shall be deemed admitted for purposes of the motion." Id. (citing N.D. Ill. L.R. 56.1 (b)). The Seventh Circuit has "consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission." Id. (citations omitted).

A party opposing summary judgment may filed a statement of additional facts (hereinafter "56.1(b)(3)(B) Statement of Additional Facts"). N.D. Ill. L.R. 56.1(b)(3)(B). This 56.1(b)(3)(B) Statement of Additional Facts must be, as with the 56.1(a)(3) Statement, in short numbered paragraphs supported by specific references to the record. Id. The 56.1(b)(3)(B) Statement of Additional Facts "provides the *only* acceptable means of. presenting additional facts." Malec 191 F.R.D at 584 (citing Midwest Imports Ltd. v. Coval, 71 F.3d 1311, 1317 (7th Cir. 1995))

ANALYSIS

As [*11] explained below, in section I this court analyzes whether Sekendur should be deemed to have admitted the factual allegations in Anoto's 56.1(a)(3) Statements by failing to comply with Local Rule 56.1 This court determines in section I that Sekendur's failure to comply with Local Rule 56.1 does operate to admit the facts properly set forth by Anoto. As explained later, applying the admitted facts to the law results in a ruling granting summary judgment in favor of Anoto on both of

Case 3:02-cv-01271-AWT    Document 69-2    Filed 03/28/2005    Page 5 of 12

Page 5
2004 U.S. Dist. LEXIS 21715, *

its motions. However, in an effort to be charitable toward Sekendur, even though neither Seventh Circuit precedent nor Local Rules so require, this court also explains in section I that it has done its best to carefully examine the record for any evidence which might create an issue of fact that would require denial of Anoto's summary judgement motions.

In section II, this court explains that Sekendur's unsupported assertions of fact and conclusory statements are not competent evidence for purposes of creating a material dispute of fact. Finally, in sections III and IV, this court reviews the merits of Anoto's summary judgment motions in light of Sekendur's failure to comply with Local Rule 56.1 and this [*12] court's examination of the record on Sekendur's behalf. The court concludes that Anoto is entitled to summary judgment.

I. SEKENDUR'S STATUS AS A PRO SE PARTY AND HIS FAILURE TO COMPLY WITH LOCAL RULE 56.1.

As a preliminary matter, this court will address Sekendur's status as a pro se defendant and what effect, if any, that status has on his obligation to comply with the rules and procedures, including Local Rule 56.1. As discussed below, two issues are relevant: (1) the law does not allow a pro se party who fails to present evidence creating a genuine issue of material fact to avoid summary judgment; and (2) Sekendur himself is less deserving of the "solicitousness" afforded pro se parties, see Kincaid v. Vail, 969 F.2d 594, 598-99 (7th Cir. 1992), because Sekendur is neither unsophisticated nor inexperienced in litigation.

First, the law does not exempt a pro se party facing summary judgment from demonstrating a material dispute of fact, and furthermore, the law does not require a district court judge to scour the record in search of a dispute of fact on behalf of a pro se party. Pro se status, especially when the plaintiff is a prisoner, may excuse compliance [*13] with some of the technical rigors of summary judgment. See Kincaid, 969 F.2d at 598. Nevertheless, pro se status alone does not excuse noncompliance with all procedural rules. Members v. Paige, 140 F.3d 699, 702-03 (7th Cir. 1998) (explaining that "rules apply to uncounseled litigants and must be enforced"). "The essence of liberal construction [given to pro se parties] is to give a *pro se* plaintiff a break when, although he stumbles on a technicality, his pleading is otherwise understandable." Hudson v. McHugh, 148 F.3d 859, 864 (7th Cir. 1998). However, in the context of summary judgment, a district court need not, even for pro se plaintiffs, "scour the record looking for factual disputes," and a pro se party cannot avoid summary judgment without demonstrating a material dispute of fact. Greer v. Bd. of Ed. of the City of Chicago, 267 F.3d 723, 727 (7th Cir. 2001).

Greer is illustrative. The pro se plaintiff in Greer was faced with a summary judgment motion from the defendant and filed a 56.1 (b)(3)(A) Response that "miserably failed to comply with Local Rule 56.1" for two reasons: first, the pro se [*14] plaintiff merely "disagreed with the" facts in the defendants 56.1(a)(3) Statement on the grounds that defendants statements were "vague," or "not fully stated or explained," or "simply untrue;" and second, because the pro se plaintiff did not cite any evidence whatsoever as is required by Local Rule 56.1. Greer, 267 F.3d at 727. In addition to these deficiencies, the Seventh Circuit noted that after failing to present or dispute facts as required by Local Rule 56.1, the pro se party "used a 16 page brief as a veritable catapult to hurl a jumbled mass of information (none of which was referenced in his Rule 56.1 statement) at the [defendant] and the district court in hope of avoiding summary judgment." Id. Under these circumstances, the Seventh Circuit explained that the pro se plaintiff's "pleadings [had] obfuscated the true issues at stake and have served only to further burden an already burdened judicial system and to frustrate the [defendant's] attempts to marshal its resources in a targeted defense against his allegations . [and that] the district court would have been within its discretion to grant the [defendant's] motion for summary judgment [*15] on that basis alone." Id. Nevertheless, the district court in Greer "charitably parsed the record for evidence," but finding none granted the defendant's motion for summary judgment, which the Seventh Circuit affirmed. Greer, 267 F.3d at 727.

This court cites Greer at length because of the similarities of Sekendur's responses to those of the pro se plaintiff in Greer. Sekendur's 56.1(b)(3)(A) Responses repeatedly disagrees with the facts in Anoto's 56.1(a)(3) Statements by stating in a conclusory manner that Anoto "provides insufficient evidence to support its allegations" or "no data" (See e.g., Anoto's 56. 1(b)(3) Resp. for Noninfringement, PP 8, 11, 13, 21, 22, 24, 25, 32). More importantly, as explained below, Sekendur's lengthy disagreements in his 56.1(b)(3)(A) Responses are not evidence and, with few exceptions, Sekendur cites no evidence whatsoever.

The second point relevant to Sekendur's pro se status is that, to the best of this court's knowledge, he is sophisticated and experienced in litigation. He has successfully applied for and received the '434 patent, and as the record in this case indicates, he engaged in lengthy business negotiations [*16] with Anoto and various other corporations. Sekendur also has a great deal of litigation experience in this court. He has filed suit in this court on at least four different actions: Sekendur v. Dent

Case 3:02-cv-01271-AWT   Document 69-2   Filed 03/28/2005   Page 6 of 12

Page 6
2004 U.S. Dist. LEXIS 21715, *

A Medina, Case No. 00-7054; Sekendur v. Shiken Corp., Case No. 00-7055; Sekendur v. Fed Bankcentre, Case No. 04-3853; Sekendur v. American Arbitration Asso'c, Case No. 04-3852. n4 Furthermore, at times in this litigation, even though he did not disclose this fact to the court, Sekendur has had substantial assistance from an attorney. (Dkt. Nos. 66 - 70.) In short, Sekendur appears to be an educated, experienced businessman who has made an informed choice to forego having counsel represent him in this matter, and who has no qualms about resorting to litigation when he believes it is in his best interest to do so.

n4 This court also notes, that Sekendur, apparently along with his brother, is currently defending a separate action pending on this court's calendar: USA ex rel. Glenn A. McCandliss, Case No. 03-807.

[*17]

Given Sekendur's apparent sophistication and experience, this court rules that it is proper to afford Sekendur some leniency in regard to his compliance with rules and procedures; but not the same liberal standard afforded indigent pro se prisoners and other inexperienced, unsophisticated pro se litigants. Therefore, this court has reviewed all of the materials submitted by Sekendur in response to Anoto's summary judgment motions, even though these materials have been submitted late and, in the case of his Sur-Reply (Dkt. No. 129) n5, without leave of court. n6 However, this court believes that it should not be obligated to wade through the "jumbled mass of information . . . obfuscating the true issues at stake" filed by an experience businessman and litigator who has chosen to forego representation in this matter. See Greer 267 F.3d 727.

n5 Given this court's ruling, Anoto's Motion to Strike Sekendur's Sur-Reply to Anoto's Motion for Summary Judgment of Invalidity filed on October 22, 2004 is moot.

n6 For the sake of clarity of the docket) this court notes that Sekendur filed two identical sets of documents about two weeks apart in response to Anoto's Summary Judgment Motion of Noninfringement (Dkt. No. 75). The court has reviewed both sets of documents and has determined that they are materially identical. (Compare, Dkt Nos. 99, 107 and 108, with Dkt Nos. 103, 106 and 109.)

[*18]

As explained below, the law supports a granting of summary judgment on the basis of the properly supported facts (not adequately disputed by Sekendur) that Anoto alleges in its 56.1(a)(3) Statements. Accordingly, per the Seventh Circuit's instruction in Greer, and as explained in more detail below, this court rules that Anoto's two motions for summary judgment should be granted on the grounds that Sekendur's "miserable failure" to comply with Local Rule 56.1 and his attempt to stave off summary judgment by sowing confusion with lengthy responses constituting & "jumbled mass of information" demonstrate that no material dispute of fact exist. See Greer, 267 F.3d 727. Nevertheless, as an alternative basis for granting summary judgment, this court does its best to "charitably parse the record for evidence" in support of Sekendur's position that summary judgment should be denied, n7 even though this court is not obliged to do so. See Id., see also United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.") As this court explains below, this court was unable to discover any competent [*19] evidence demonstrating the existence of a material dispute of fact in the record.

n7 This court notes again that examining the record for evidence means examining the record for competent evidence, because the law never allows a pro se party to avoid summary judgment without actually creating a material issue of fact somewhere in the record. See Greer v. Bd. of Ed. of the City of Chicago, 267 F.3d 723, 727 (7th Cir. 2001).

II. SEKENDUR'S UNSUPPORTED ARGUMENTS ARE NOT EVIDENCE

Among the other preliminary matters relevant to both of Anoto's motions for summary judgment are the lengthy unsupported arguments and technical conclusions presented by Sekendur in his materials before this court. As explained above, general denials and conclusory assertions are not sufficient to defeat a motion for summary judgment. See Chemical Eng'r Corp. v. Essef Indus., Inc., 795 F.2d 1565, 1571 (Fed. Cir. 1986) ("General assertions of fact issues, general denials, and conclusory statements are insufficient [*20] to shoulder the non-movant's burden."). Furthermore, Sekendur's own arguments cannot stand as competent evidence, since Sekendur has repeatedly testified that he lacks the background and qualifications to answer technical questions. (Anoto's Reply Brief for Lack of Enablement, Ex. 5 at 18-19, 69, 152-53, 701.) During a

deposition in this case, Sekendur made a blanket objection on competence grounds to "all technical questions" put to him, because in his own words he is "not an engineer" and "just not qualified" to answer, (Id at 701.) Therefore, by his own admission, the unsupported arguments in both his briefs and his submissions under Local Rule 56.1 are inadmissible, and therefore insufficient to create a disputed issue of fact. See Pearson v. Ramos, 237 F.3d 881, 886 (7th Cir. 2001) ("A nonexpert is not permitted to give expert testimony.").

Finally, in relation to infringement, Sekendur's arguments in his brief and 56.1(b)(3)(A) Statement are not saved by the declaration (Ex. 5) from his expert that he attached to his Brief in Response to Anoto's Summary Judgment Motion for Noninfringement. This declaration, aside from one paragraph indicating the documents [*21] the expert reviewed, contains a single statement;" I have reviewed both Sekendur's Response and Sekendur's Brief, and it is my opinion that the technical statements made in these documents are valid." (Sekendur's Brief in Resp. to Anoto's S.J. Mot. for Noninfringement, Ex. 5.) This vague, conclusory declaration can be given no weight. Mid-State Fertilizer Co. v. Exch. Nat'l Bank, 877 F.2d 1333, 1339 (7th Cir. 1989) (affidavit supplying nothing but conclusions "supplies nothing of value to the judicial process," and is insufficient to defeat summary judgment); Dynacore Holdings Corp. v. U.S. Philips Corp., 363 F.3d 1263, 1278 (Fed. Cir. 2004) (conclusory opinion insufficient to defeat a motion for summary judgment). n8

n8 Furthermore, Sekendur's expert's Declaration (Ex. 5) and Report (Ex. 10), both attached to his Brief in Response to Anoto's Summary Judgment Motion for Noninfringement, are unreliable and therefore not admissible as evidence because (1) the expert testified that he never tested any accused of the products (Anoto's 56.1(a)(3) Stmt. of Noninfringement, Ex. 12 at 82); (2) the conclusions in those document repeatedly contradict the experts prior deposition testimony, see Amadio v. Ford Motor Co., 238 F.3d 919, 926 (7th Cir. 2001); and (3) the expert's conclusions on infringement were not based on this court's claim construction. See Techsearch L.L.C. v. Intel Corp., 286 F.3d 1360, 1373-74 (Fed. Cir. 2002). Sekendur rarely relies on his expert's report, and this court's review of that report found no admissible evidence that creates a material disputed of fact. Accordingly, this court only addresses the report when necessary in this opinion.

[*22]

III. INFRINGEMENT

"A determination of patent infringement requires a two-step analysis." Dynacore Holdings Corp. v. U.S. Philips Corp., 363 F.3d 1263, 1273 (Fed. Cir. 2004). First, as this court has done (Dkt. No. 50), disputed claim terms must be construed. Then, the court must "compare the properly construed claims to the allegedly infringing device." Id. Infringement occurs when the accused device meets each claim limitation. Id. Unless each and every requirement of a patent claim is found in an accused product there can be no literal infringement. See e.g. Laitram Corp. v. Rexnord, Inc., 939 F.2d 1533, 1535 (Fed. Cir. 1991). Furthermore, subject matter disavowed during prosecution history through the doctrine of prosecution disclaimer cannot be recaptured through the doctrine of equivalents. Cordis Corp. v. Medtronic AVE Inc., 339 F.3d 1352, 1362-63 (Fed. Cir. 2003) (citing Omega Eng'g. Inc. v. Raytek Corp., 334 F.3d 1314, 1326 n.1 (Fed. Cir. 2003)).

A. Anoto-Programmed Processors Compensate for Stylus Tilt

As this court ruled when construing the disputed claims of the '434 patent, Sekendur disavowed [*23] the use of any correction for stylus tilt (Dkt. No. 50 at 24). Anoto has properly supported with evidence its assertion that "Anoto-Programmed Processors compensate for stylus tilt." (Anoto's 56.1(a)(3) Statement for Noninfringement, P 11). In response, Sekendur first alleges that "Anoto provides insufficient evidence [in] support [of] its allegation," and then cites a figure on "page 20 of Opinion of FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, L.L.P. dated July 7, 2003" for the proposition that "it is evident . . . that there is not 'stylus tilt' distortion." (Sekendur's 56.1(b)(3)(A) Resp. for Infringement, P 11).

Sekendur's mere disagreement without citation to evidence is insufficient to create a material issue of fact. Smith v. Lamz, 321 F.3d 680, 683 (7th Cir. 2003). Furthermore, his citation to an alleged Opinion letter from a law firm cannot be considered because Sekendur does not direct this court to where that alleged Opinion Letter exists in the record. The failure to cite to where this Opinion letter exists in the record, combined with the absence of any other citation to evidence, violates Local Rule 56.1 and thereby renders Anoto's paragraph 11 [*24] of its 56.1(a)(3) Statement for Noninfringement admitted.

Even though it is not obliged to do so, the court examined the record for a "page 20 of Opinion of FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, L.L.P. dated July 7, 2003" and has found a

reference to such a page in Sekendur's Brief in Response to Anoto's Motion for Summary Judgment for Noninfringement describing it as Exhibit 6 to the brief. (Sekendur's Brief in Resp to S J Mot. for Noninfringement at 10) This court has reviewed Exhibit 6 and sees no connection between that exhibit and the issue of stylus tilt.

Accordingly, applying Local Rule 56.1, Sekendur is deemed to have admitted Anoto's assertion that Anoto-Programmed Processors compensate for stylus tilt because he failed to adequately rebut it.

Furthermore, as explained in section II supra, Sekendur's unsupported arguments in his brief also do not create a material issue of fact These arguments are not evidence. Furthermore, these arguments rest on Sekendur's premise of his definition of the term "stylus tilt." Sekendur made no such distinction when he broadly disavowed the use of stylus tilt while prosecuting the '434 patent, and, therefore, Sekendur's claims [*25] are limited by the scope of the broad disclaimer. See Pharmacia & Upjohn Co. v. Mylan Pharms Inc., 170 F.3d 1373, 1377-78 (Fed. Cir. 1999).

Accordingly, there is no genuine issue of material fact that Anoto-Programmed Processors compensate for stylus tilt. Therefore, on this basis, those Anoto-Programmed Processors do not infringe on the '434 patent.

B. The Anoto Dot Pattern Requires Correction for Stylus Tilt in Order to Determine Coordinates

The "coding means" claimed by Sekendur must be sufficiently large "so that stylus tilt is not a factor in determining coordinates." (Dkt. No. 50 at 9.) Anoto has presented sufficient evidence that its Dot Pattern requires correction for stylus tilt in order to determine coordinates. (Anoto's 56.1(a)(3) Stmt. for Noninfringement, P 15.) Sekendur cites no evidence in his attempt to rebut this fact (Sekendur's 56.1(b)(3) Resp for Infringement, PP 13, 14, 15), and this court has already rejected Sekendur's argument that stylus tilt correction does not exist in Anoto Enabled Technology. Therefore, according to Local Rule 56.1, Sekendur has admitted that Anoto's Dot Pattern requires correction for stylus tilt.

Furthermore, [*26] after examining the arguments in Sekendur's brief, (Sekendur's Brief in Resp. to Anoto's S J. Motion for Noninfringement, 10-12), this court finds nothing that creates a genuine issue of fact. Sekendur's arguments, and his experts, that refer to "Bennett type stylus tilt" are not relevant because Sekendur's broad disclaimer of compensation for stylus tilt made no such distinction. See Pharmacia, 170 F.3d at 1377-78. And, as explained before, this court attaches no significance - at least in regard to stylus tilt - to Exhibit 6 to Sekendur's Brief in Response to Anoto's Motion for Summary Judgment for Noninfringement.

Accordingly, there is no genuine issue of material fact that the Anoto Dot Pattern requires correction for stylus tilt. Therefore, on this basis, the Anoto Dot Pattern does not infringe on the '434 patent.

C. Anoto-Programmed Processors do not Intentionally Skip Points in the Path of the Stylus

The "processing means" required by each of Sekendur's patent claims must employ "techniques so that points can be intentionally skipped and processing power thereby reduced" (Dkt No. 50 at 20.) Anoto has provided evidence to support its assertion of fact [*27] that Anoto-Programmed Processors and the Anoto Enabled Products that include them do not intentionally skip points in the path of the stylus and do not employ techniques to save on processing power by intentionally skipping points. (Anoto's 56.1(a)(3) Stmt. for Noninfringement, P 16.)

Sekendur's general unsupported disagreement (Sekendur's 56.1(b)(3)(A) Resp. for Infringement, P 16) is, of course, not sufficient to create a genuine issue of material fact. Smith v. Lamz, 321 F.3d 680, 683 (7th Cir. 2003). Furthermore, the remaining arguments made in paragraph 16 of Sekendur's 56.1 (b)(3) Response for Infringement, and in his brief when addressing this issue, do not create an issue of fact because these arguments do not address this Court's construction of the '434 patent. Sekendur's argument is that Anoto-Programmed Processors skip points in the path of the stylus because "Anoto's optical detector initially captures an image... [of] over 200 'dot sets' ... and then 'intentionally discards'" a portions of those dots before calculating a coordinate point. (Sekendur's 56.1(b)(3) Resp. for Infringement, P 16; Seknendur's Brief in Resp. to Anoto's SJ Motion of Noninfringement, [*28] 12-16.) The issue is not whether the Anoto-Programmed Processor utilizes all the dots processed to determine a coordinate, but whether it, instead of reading successive points on a line, skips certain points in the line and then uses techniques to estimate the locations of the skipped points. (Dkt. No. 50 at 24.) Anoto has presented sufficient evidence that it does not employ techniques to save on processing power by intentionally skipping points This court has discovered no competent evidence from Sekendur to the contrary.

Accordingly, there is no genuine issue of material fact that Anoto-Programmed Processors do not intentionally skip points in the path of the stylus. Therefore, on this basis, Anoto-Programmed Processors do not infringe on the '434 patent.

D. Portions of the Anoto Dot Pattern Defining each X-Y Coordinate are used to Define Other X-Y Coordinates

The "coding means" claimed by Sekendur must "not have any portion of a code defining an X-Y coordinate used to define any other X-Y coordinate." (Dkt. No. 50 at 9.) Anoto has presented sufficient evidence to support the assertion that each dot of the Anoto Dot Pattern is used to encode 36 separate X-Y coordinates [*29] (Anoto's 56.1(a)(3) Stmt. for Noninfringement, PP 18-22.) In his 56.1(b)(3)(A) Response for Infringement, Sekendur cites no evidence to rebut this factual allegation, which according to Local Rule 56.1, results in the fact being admitted. Smith v. Lamz, 321 F.3d 680, 683 (7th Cir. 2003). Sekendur's and his expert's attempt to rewrite this court's claim construction (Sekendur's Brief in Resp. to Anoto's S.J. Mot. of Noninfringement at 16-20) also cannot create a genuine issue of material fact. This court can find no other competent evidence in the record demonstrating a material dispute of fact on this issue.

Accordingly, there is no genuine issue of material fact that portions of the Anoto Dot Pattern defining each X-Y coordinate are used to define other X-Y coordinates. Therefore, on this basis, the Anoto Dot Pattern does not infringe on the '434 patent.

E. The Data Defining Each Anoto Coordinate is Not Unique from the Data Making up Each Other Coordinate

Similar to the preceding limitation, the "coding means" claimed by Sekendur must "be arranged so that the data making up each coordinate code is unique from the data making up each other coordinate code [*30]" (Dkt. No. 50 at 10.) Anoto has presented sufficient evidence to support its factual allegation that each dot of the Anoto Dot Pattern defines the location of at least 35 other coordinates. (Anoto's 56.1 (a)(3)Stmt. for Noninfringement, P 27.) In response, Sekendur again presents general denials and unsupported conclusions without any citation to any type of evidence. (Sekendur's 56.1(b)(3)(A) Resp. for Infringement, PP 26, 27), which, as before, operates to admit Anoto's factual allegation.

Furthermore, this court can find no competent evidence rebutting this factual allegation in Sekendur's brief. (Sekendur's Brief in Resp. to Anoto's S.J. Mot. for Noninfringement, at 20-22) As before, Sekendur's unsupported arguments and conclusory statements cannot create a genuine issue of material fact.

Accordingly, it is undisputed that the data defining each Anoto coordinate is not unique from the data making up each other coordinate. Therefore, on this basis, Anoto's Dot Pattern does not infringe on the '434 patent.

F. Anoto Programmed Processors are Inherently more Powerful than that of Bennett patent '736

The "processing means" of Sekendur's '434 patent must "have a sampling rate [*31] significantly less" than the processing power of U.S. Patent No. 5,051,736 ("Bennett patent '736") n9 Anoto has provided sufficient evidence to support its factual allegation that its processors are inherently more powerful than that of Bennett patent '736. (Anoto's 56.1(a)(3) Stmt. for Noninfringement, PP 28-30.) In response, Sekendur provides no evidence except to cite to a single exhibit that discusses the relative sizes of Anoto's and Bennett patent '736's dot patterns (Sekendur's 56.1(b)(3) Resp. for Infringement, PP 28-30.) This, as before, operates to admit Anoto's factual allegations because this court cannot divine how Sekendur's cited evidence creates a dispute of fact about this issue.

   n9 This patent was granted to Bennett et al., and as explained throughout this court's claim construction (Dkt. No. 50), Sekendur repeatedly distinguished his invention from it in order to obtain patent allowance. Bennett patent '736 was referred to as "Bennett et al." in this court's claim construction (Dktn. No. 50) because that was the term utilized by the parties.

[*32]

Furthermore, this court can find no competent evidence in Sekendur's brief to rebut Anoto's factual allegation. (Sekendur's Brief in Resp. to Anoto's S.J. Mot. for Noninfringement, at 22-24.) Accordingly, it is undisputed that Anoto-Programmed Processors are inherently more powerful than that of Bennett patent '736. Therefore, on this basis, Anoto-Programmed Processors do not infringe on the '434 patent.

G. The Anoto Dot Pattern cannot be used without a Processor Significantly Less Powerful than that of Bennett patent '736

Similar to the preceding limitation, the "coding means" of the '434 patent "must be large enough to permit a sampling rate significantly less than the rate of [Bennett patent '736]." (Dkt No. 50 at 9.) As explained in the preceding section, it is an undisputed fact that Anoto-Programmed Processors are inherently more powerful than that of Bennett patent '736. Therefore, on this basis, Anoto's Dot Pattern does not infringe on the '434 patent. n10

   n10 Given this court's ruling, it is unnecessary to expresses no opinion on the last

two arguments Anoto raised to establish noninfringement (Anoto's Brief in Support of S.J. for Noninfringement 11-12.)

[*33]

II. INVALIDITY FOR LACK OF ENABLEMENT

A patent is presumed valid. 35 U.S.C. § 282. Nevertheless, Section 112 P 1 of the U.S. Code requires that the specification of a patent:

> contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise and exact terms as to enable any person skilled in the art to which it pertains or with which it is most nearly connected, to make and use the same . . .

"To be enabling, the specification of a patent must teach those skilled in the art how to make and use the full scope of the claimed invention without 'undue experimentation'" Gentech, Inc. v. Novo Nordisk, A/S, 108 F.3d 1361, 1365 (Fed. Cir. 1997) (quoting In re Wright, 999 F.2d 1557, 1561 (Fed. Cir. 1993)) (citations omitted). "Whether making and using the invention would have required undue experimentation, and thus whether the disclosure is enabling, is a legal conclusion based upon several underlying factual inquiries." Id. (citation omitted).

The Federal Circuit has set forth a number of factors that may be considered in determining whether [*34] a disclosure would require undue experimentation:

> (1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredicatability of the art, and (8) the breadth of the claims

Enzo Biochem, Inc. v. Calgene, Inc., 188 F.3d 1362, 1371 (Fed. Cir. 1999) (citing In re Wands, 858 F.2d 731, 737 (Fed. Cir. 1988)). "All of these factors need not be reievwed when determining whether a disclosure is enabling." Enzo Biochem, 188 F.3d at 1371.

The rationale behind the enablement requirement is well established. "Patent prosecution is granted in return for an enabling disclosure of an invention, not for vague intimations of general ideas that may or may not be workable." Gentech, 108 F.3d at 1366. As the Federal Circuit has noted, "tossing out the mere germ of an idea does not constitute enabling disclosure." Id.

Anoto argues that the '434 patent does nothing more than toss out the mere germ [*35] of an idea, and, therefore, that the patent is invalid for lack of enablement. This court agrees.

It is undisputed that it would take at least "multiple years" measure in person working hours, and possibly "four person years of effort to make a working prototype of the claimed invention." (Anoto's 56.1 (a)(3) Stmt. for Non-Enabelement, PP 5,6.) Anoto's expert supported the conclusion "that it would 'take a multiple number of years of effort, measured in person working hours, to move from the disclosure of the '434 patent to a working embodiment." (Id., P 5.) Sekendur's own expert supported the latter conclusion, that it would take four person-years of effort to make a working prototype of the claimed invention. (Id., P 6.) Sekendur's expert also stated that each of the four persons working on the prototype would individually require ten years of experience and a master's degree in computer science, with extensive experience in microcontroller programming. (Id., P 7.) Despite Sekendur's efforts to cast doubt on his own expert, (Sekendur's 56.1(b)(3) Resp. for Enablement, P 6), Sekendur's expert was clear that the four person-years of effort would be only for purposes of [*36] making a working prototype, and not for other tasks such as consumer related testing (Anoto's 56.1(a)(3) Stmt. for Non-Enablement, Ex. 2 at 132). Furthermore, Sekendur cannot create an issue of fact by arguing, without any support, that neither Anoto's expert nor his own expert are qualified to testify on the extent of experimentation necessary to create a prototype of the '434 patent. n11

---

n11 The court notes that Anoto has established that its expert has extensive experience in development of both hardware and software relating to digital pen computing. (Anoto's 56.1(a)(3) Stmt. of Non-Enablement, Attachment B to Ex. 1.) Thus, even if this court were to disregard Sekendur's expert, which this court sees no reason to do, it would still be undisputed that multiple years of effort to develop a prototype of the '434 patent.

---

There is no fixed rule as to the amount of time after which experimentation would become undue, it is clear though that the quantity of experimentation necessary is important to a determination [*37] of enablement. In re Wands, 858 F.2d at 737. The Federal Circuit has held

that one and a half to two person years of effort is "clearly unreasonable" and therefore constitutes undue experimentation. White Consol. Indus., Inc. v. Vega Servo-Control, Inc., 713 F.2d 788, 791 (Fed. Cir. 1983); see also In re Ghiron, 442 F.2d 985, 992, 58 C.C.P.A. 1207 (C.C.P.A. 1971). Therefore, here, the four years of person effort Sekendur's expert concedes would be required is twice the amount of time the Federal Circuit has labeled as "clearly unreasonable," White Consol, 713 F.2d. at 791, which weighs heavily in favor of a finding that undue experimentation is necessary to reduce the '434 patent to practice.

Another factor weighing in favor of a ruling of undue experimentation is the fact that the '434 patent fails to disclose the operation of its "processing means." Both parties agree that "the processing means lies at the heart of the invention to the extent it processes the printed code, accurately translating that code into precise coordinates fast enough to keep up with the speed of handwriting." (Anoto's Brief in Support of S.J. Mot. for Non-Enablement, [*38] at 4; Sekendur's Brief in Resp. to Anoto's S.J. Mot for Non-Enablement at 7-8.) Each claim of the '434 patent requires a "processing means" for receiving and processing the output signal to determine an absolute coordinate based on the coding pattern. (Dkt No. 50 at 20-23.) The '434 patent discloses a computer, processor, PC board, microcomputer or a microprocessor as a structure corresponding to the function of the "processing means." (Dkt No. 50 at 22.) However, the '434 patent does not disclose the operation of the claimed "processing means." (Anoto's 56 1(a)(3) Stmt. for Non-Enablement, P 11.) As Sekendur's expert concedes, the '434 patent "has no explanation about the microprocessor function." (Id., P 12.) Sekendur himself describes the operation of the "processing means" as "a huge technical issue," (Id., P 13), and Anoto has presented sufficient evidence from its expert that overcoming the technical issues involved in the operation of the "processing means" would require substantial experimentation. (Id., PP 13-19.)

The substantial technical issues involved in operating the "processing means" were not disclosed, because as Sekendur himself admits, he has "no scientific [*39] training" and is "not an engineer." (Id., P 20.) Sekendur explained that while he "had a general idea of how [the device] would work,... the actual engineering of it to make it work was something. [he] wasn't qualified to do." (Id.) Sekendur's Local Rule 56.1(b)(3)(A) Response for Enablement does not comply with Local Rule 56.1 and Sekendur presents no other competent evidence to dispute the preceding facts. Accordingly, it is undisputed that the '434 patent does not disclose the operation of the claimed "processing means" - an operation that lies at the heart of the invention.

The main thrust of Sekendur's response is that prior art cures the deficiencies in the patent. This court rejects that argument for two reasons. First, Sekendur presents no evidence of how or why prior art would cure the lack of disclosure about the operation of the claimed "processing means" except to state in a conclusory manner, unsupported by any evidence, "that these problems have already been resolved." (Sekendur's Brief in Resp. to Anoto's S.J. Mot. for Non-Enablement at 8.) As explained, Sekendur's general unsupported assertions of fact and technical conclusions are not evidence. Thus, [*40] there is no competent evidence before this court establishing that prior art cures the deficiency of a complete lack of disclosure about the operation of the "processing means." Just as important, Sekendur fails to cite his own specification for even a suggestion that the patent itself provides an enabling disclosure for the "processing means." Gentech, 108 F.3d at 1366 (explaining that the "essence of the enablement requirement" is that "patent protection is granted in return for an enabling disclosure of an invention, not for vague intimations of general ideas that may or may not be workable.") As the Federal Circuit has explained:

> It is true . that a specification need not disclose what is well known in the art. [(citations omitted)]. However, that general, oft-repeated statement is merely a rule of supplementation, not a substitute for a basic enabling disclosure. It means that the omission of minor details does not cause a specification to fail to meet the enablement requirement... It is the specification, not the knowledge of one skilled in the art, that must supply the novel aspects of an invention in order to constitute adequate enablement.

[*41]

Gentech, 108 F.3d at 1366. The "processing means" is, as both parties agree, at the heart of this invention and is required by every claim in the '434 patent. Yet, it is undisputed that the '434 patent contains no details whatsoever about how the "processing means" functions.

This court rules that the '434 patent is invalid for lack of enablement because it is undisputed that it would take at least a multiple number of years and possibly four years of person effort to develop a working prototype and because the '434 patent lacks basic disclosures

Case 3:02-cv-01271-AWT    Document 69-2    Filed 03/28/2005    Page 12 of 12

Page 12
2004 U.S. Dist. LEXIS 21715, *

necessary to teach the operation of the "processing means."

## CONCLUSION

For the reasons set forth above, Anoto's Motion for Summary Judgment of Noninfringement (Dkt. No. 75) and Motion for Summary Judgment of Invalidity for Lack of Enablement (Dkt. No. 104) were granted, and Sekendur's Motion for Summary Judgment for Failure to State a Cause of action and For Infringement (Dkt. No. 113) was denied in this court's October 22, 2004 Order (Dkt. No. 133.) Judgment is now directed to be entered in favor of plaintiff Anoto and against defendant Sekendur on Count III of Anoto's Complaint (Dkt. No. 1) and on Sekendur's [*42] counterclaim (Dkt. No. 32). Pursuant to Rule 54(b), there is no just reason for delay of entry of judgment as to these claims.

Sekendur's Motion to Disqualify John M. Heaphy Attorney for Conflict of Interest (Dkt. No. 12) is denied for having no proven basis in fact. Anoto's Motion to Strike Sekendur's Sur-Reply to Anoto's Motion for Summary Judgment of Invalidity filed on October 22, 2004 is moot. Anoto's Motion to Strike (Dkt. No. 120) is also moot.

The parties are urged to discuss settlement. The trial date, pretrial order date, and pretrial conference date are vacated. This case is set for a report on status at 9:00 a.m. on November 16, 2004.

ENTER:

JAMES F. HOLDERMAN

United States District Judge

DATE: October 22, 2004

**JUDGMENT IN A CIVIL CASE**

Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED Pursuant to FRCP 54(b), there is no just reason for delay of entry of judgment, summary judgment is entered on count III of the complaint and on defendant's counterclaim in favor of plaintiff Anoto AB on Noninfringement and on Invalidity [*43] for Lack of Enablement and against defendant Oral F. Sekendur

Date: 10/27/2004