The U·S· District Court,
450 Main Street
Hartford, CT 06103
Date: 25th Apr, 2005

Doc.# : 3:02- CV- 01271 (AWT)
BEN· SYASU Vs MAURA O'CONNELL

PLAINTIFF'S EMPHATIC OBJECTION TO
MEMORANDUM IN SUPPORT OF MOTION FOR
SUMMARY JUDGEMENT

The plaintiff provides the following
EMPHATIC Objection to "Memorandum In
Support Of Motion For Summary Judgement"
and prays the Motion For Summary Judgement
would be DENIED forthwith, accordingly.

Page 2

Section 49-15 of the CT General Statute Annotated
Captioned: "Opening Of Judgements Of Fore-Closure"
states:

"Any judgement fore-closing
the title to real estate by strict fore-closure
may, at the discretion of the Court rendering
the same, upon the written motion of any
person having an interest therein, and for
cause shown, be opened and modified,
not withstanding the limitation imposed by
Section 52-212a, upon such terms as to costs
as the Court deems reasonable, but no such
judgement shall be opened after the title
has become absolute in any encumbrancer."

"but no such judgement shall be

Page 3

opened after the title has become absolute
in any encumbrancer." EMPHASIS added.

The defendant knowing that
(i) the plaintiff, Ben. Gyadu, could not be deprived
of his home and property and be ejected and
thrown out onto the streets, homeless, when the
Court did not have jurisdiction of the action
to grant the Motion To Open and Set New Law
Days as plaintiff declared in his Motion To
Set Aside the Court's Order that granted the
Motion To Open and Set New Law Days but
eager and over ambitious to use her Office to
assist Attorney Metchienne for Bella Vista Condos.
to eject the plaintiff out of his home and

Page: 4

property, regardless of the law

(ii) once she issues the Ejection Order conferring absolute title of the plaintiff's home and property upon Bella Vista Condos, no matter how BAD and FRAUDULENT the order might be, the plaintiff could not do anything, whatsoever, to retain the title of his home and property upon receiving the notice of the Memorandum Of Decision and at that juncture the title of plaintiff's home and property would be bestowed upon Bella Vista Condos and plaintiff would then be ejected from his home and thrown out onto the streets, homeless, as she and Attorney Melchionne planned it, decided to ABANDON her specified duties to COLLABERATE

Page    5

and CONSPIRE with Attorney Melchienne
to make it possible to issue the Ejection
Order BEFORE the plaintiff had any
chance of receiving the notice of the
Memorandum Of Decision let alone responded
to it and in the process TORPEDOED their
ILL-CONCEIVED, MALICIOUS plans

Consequently, it was not even
twenty-four (24) hours after the Superior Court
filed its Memorandum Of Decision dated the
1st Nov., 2001, before Attorney Melchienne was
somehow able to receive a copy of the Memorandum
Of Decision and turn around to prepare the
application for the Ejection Order and run down

Page 6

the Clerks' Office to file it and at the same time of 4:49 p.m. that it was filed, have the defendant receive it and issue the Ejection Order within that eleven (11) minutes to closing time at 5 p.m. against not even a thin file but a huge file that consists of seven (7) separate large volumes when the same defendant takes eight (8) days to issue an Execution Order against even a thin file of only one volume

As a consequence of the defendants actions, as alleged, by the time the U.S. postal service had a chance to put a copy of the Memorandum Of Decision into the

Page 7

plaintiff's post Office mail box to enable the
plaintiff to receive the notice of the Memorandum
Of decision let alone to respond to it, the
title of plaintiff's home and property has wrong-
fully become absolute upon Bella Vista Condos,
and it therefore became futile for plaintiff
to exercise his appeal rights as provided
by Law, e.g. the provisions of Sec. 49-15 of
the Ct Gen. Statute Annotated, to attempt to
retain the title of his property and home upon
receiving a copy of the Memorandum Of decision

           Plaintiff did not even know
that the defendant had already issued an
Ejection Order against him before he even had

Page 8

a chance to receive a copy of the notice of the Memorandum Of Decision and so when the plaintiff received a copy of the Memorandum Of Decision he embarked upon the normal legal due processes, e.g. the filing of a Motion To Re-consider, to attempt to retain the title of his home and property and did not have any reason to suspect anything when the Clerks refused to accept for filing, certain types of pleadings, e.g. Motion To Open pursuant to Section 49-15 Of C.G.S.A, and those pleadings that were accepted for filing were all denied outright

It was not until the Sheriffs left the Ejection Order at the plaintiff's door at

Page    9

about three weeks later before the plaintiff
discovered that an Ejection Order had been
issued against him fraudulently, making
it futile to file pleadings in an effort
to retain the title of his home and property

I n an effort to escape
any possible punishment for the alleged
MALICIOUS, ILL-CONCEIVED, LAWLESS act
without which the plaintiff would NEVER
have lost his home and property at the middle
of the, FRAUDULENT fore-closure action
        Litigation of the
that was instituted to DEFRAUD him of a
Condominium common charges without any
chance of exercising his appeal rights

Page 10

against the alleged VOID judgement upon which the Ejection Order was issued, causing the plaintiff all the on-going consequential damages and IRREPARABLE damages and ruining the plaintiff's life as a result, the defendant has moved for Summary Judgement against the action that was instituted as a result of the alleged DELIBERATE MIS-CONDUCT of the defendant, in the defendant's attempt to prevent any trial of the action to uncover the truth of the  allegations and thereby prevent any prosecution of her MIS-CONDUCT to continue the LAWLESS, MALICIOUS acts against innocent people for her gain

And worse yet, this is where

Page 11

the defendant filed an answer of affirmative
defense upon which the court returned the
plaintiff's Objection papers, unfiled, and so
the plaintiff expected a trial of the action
for the defendant to justify her actions

As it would be discovered
any attempt to prevent any trial of an action
brought against such an alleged DELIBERA-
TE MIS-CONDUCT represents nothing but
a DELIBERATE attempt to cover up the
INCOMPREHENSIBLE WRONG to avoid any
possible punishment that would be imposed
to, at least, discourage such an abuse of
office whose effect cause MANIFEST

Page 12

INJUSTICES and UNTOLD suffering and damages upon innocent people.

The defendants Motion For Summary Judgement is therefore a FRAUDULENT, BAD-FAITH act intended to defraud the plaintiff of justice due him as it would be discovered, without any doubt, from the Memorandum In Support Of Motion For Summary Judgement and must therefore be DENIED the relief sought accordingly

While the defendant declares that : "She is entitled to judgement as a matter of law based upon the material facts not in

Page 13

dispute", it would be discovered at a glance from the above and the Motion for Summary Judgement that every material fact of the case, i.e. a fact which will make a difference in the result of the case, is DISPU-TED by the defendant with deceptive and mis-leading claims, concocted stories and blunt lies

For example, from page 8 to page 8 of the defendants affidavit the defendant attempts to conceal the fact that she issued the Ejection Order against a huge file of seven separate volumes in 11 minutes in her ambition to have an Ejection Order on file before there was any chance for plaintiff to receive

Page 14.

a copy of the Memorandum Of Decision so that absolute title of the plaintiff's property would be conferred upon Beth Vista Condos before the plaintiff had any chance of exercising his appeal rights    to attempt to retain the title of his property upon receiving a copy of the notice of the Memorandum Of Decision and at that juncture it would be futile for plaintiff to file pleadings in an effort to retain the title and save his home    and therefore Beth Vista would have the title of the property and plaintiff would then be ejected as planned by Attorney Melchienne and the defendant

　　　　As much as she admits that the application form for the Ejection Order has

Page    15

a filing date stamp of 4:49p.m., the 2nd Nov., 2001, she attempts to conceal the fact that, that date stamp indicates that the application form was filed at 4:49p.m. and therefore she issued the Ejection Order in 11 minutes in her ambition to make sure that it would be futile for plaintiff to exercise his appeal rights upon receiving the notice of the memorandum of decision.

She puts forth concocted stories and mis-leading, confusing claims of "confirmed" forms etc. in an attempt to conceal the fact that the date stamp of 4:49p.m., the 2nd Nov, 2001, indicates that the application for Ejection Order was filed at 4:49p.m. on the 2nd Nov., 2001.

The defendant states; "I don't

Page 16

remember whether or not in this case the execution form had been stamped before I received it, or whether I had file stamped it after I had signed it."

Defendant continues at page 8 as ff:

"I don't remember when in the day of November 2, 2001, that I signed the execution of ejectment, or how long it took me to review the court records before signing it."

These kinds of "I don't remember! I don't remember!" call for a trial of the action

Even if for any strange reason there was no filing date stamp on the form, the Ejection order which was issued upon the Memorandum of

Page 17

Decision which was not filed until after 4 p.m,
getting to closing time of 5 p.m., <u>Could not
have been issued in less than 24 hours</u> of the
filing of the Memorandum Of decision at the
Clerks Office, especially in the situation
where the notice of the decision had to be
mailed      to Attorney Melchionne and if even
it was hand-delivered or faxed to Attorney Melchion-
ne, it would still take time more than the normal
eight (8) hours work day, <u>under normal
circumstances</u>, to issue the ejection order
against that huge      file of 7 separate
volumes when even a thin file of 1 volume takes the
defendant eight (8) days to issue the Execution
order.

## BAD-FAITH MEMORANDUM PRESENTED IN SUPPORT
## OF DEFENDANTS MOTION FOR SUMMARY JUDGEMENT

In considering the sub-headings of the defendants "Memorandum In Support For Summary Judgement" it would clearly be discovered that the defendant has put forth arguments which are LIES, DECEPTIVE, FRAUDULENT and MIS-LEADING without any regard to the facts of the Complaint, requiring that the <u>action be tried</u>

For Example

(1) INTRODUCTION Represents A False, Mis-leading Claim Which Is Immaterial To The Action In Question

Contrary to the defendants claim, the plaintiff's action DOES NOT "challenge any state court fore-closure proceedings" but

Page   19

The defendants MALICIOUS, LAWLESS act as plaintiff          explained above

Additionally, the plaintiff's action; Gyadu Vs Hartford Ins Co. was a Complaint about a unilateral action the defendant took in dis-continuing payment of plaintiff's Workers Compensation benefits in violation of the Law

That action therefore does not have anything to do with this action except an attempt by the defendant to portray the plaintiff as a nuisance to achieve the desired outcome by DIS-HONEST means

2    F A C T S   of Memorandum Represent Yet Another False And Mis-lead ing Claim

2(a)                                                                           Defendant states

Page 20

falsely that : The plaintiff "exhausted
all appellate procedures, including a writ
of certiorari to the United States Supreme
Court" That is FALSE
As the plaintiff declared
above, the defendant COLLABORATED and
CONSPIRED with Attorney Melchionne so that
a FRAUDULENT Ejection Order that would
make it FUTILE for plaintiff to exercise his
appeal rights to retain the title of his home
and property could be issued

The plaintiff's Writ of Certiorari
was in the action: BEN. STAOU VS BELLA
VISTA CONDOS but not in the action: BELLA VISTA

Page 21

CONDOS VS BEN. GYADU

The decision of Writ Of Certiorari dated the 20th Febr., 2001, as shown in the defendants Exhibit "C" could not have been a decision of the action Bella Vista Condos VS Ben. Gyadu whose, State of CT Supreme Court Order was issued on the 11th Apr. 2001, as it would be discovered from the defendants Exhibit "B". any Certiorari would therefore be sought after 11th Apr., 2001,

This is where the plaintiffs appeal of denial of removal of the action to the federal court was still pending at the 2nd Circuit and a Mandate was not issued until the 18th Of Apr., 2002. Please, see a copy of the MANDATE enclosed in the Appendix. As it would

Page 22

clearly be discovered, the plaintiff DID NOT exhaust appellate procedures and could not as the defendants MALICIOUS act, as alleged, made it FUTILE to do so.

As much as the file WAS NOT ripsed to issue an Execution Order against it, the defendant all the same issued the Execution Order, flouting the provisions of every Law that was in her way, because of her over ambition to use her Office to assist Attorney Melchionne to throw the plaintiff out of his home and property onto the streets in the cold Winter, homeless, to satisfy her personal gain.

2(b)        Defendant states : " Mr Gyadu did not