UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BEN GYADU<br>*Plaintiff* | : CIVIL NO. 3:02-CV-01271 (AWT) |
| v. | |
| MAURA O'CONNELL<br>*Defendant* | : July 7, 2005 |

### DEFENDANT'S REPLY AND OBJECTION TO THE PLAINTIFF'S MATERIALS[1] UNTIMELY SUBMITTED IN OPPOSITION TO SUMMARY JUDGMENT

The *pro se* plaintiff's opposition materials do absolutely nothing to contradict the facts and arguments the defendant sets forth in favor of summary judgment. The plaintiff's legal memoranda simply restate the same meritless arguments he makes in his Amended Complaint and which have been rebutted in detail in the defendant's memorandum in support of her summary judgment motion, incorporated herein by reference. (Docket # 58). His "Counter-Affidavits" and Local Rule 52(a)(2) statement are no better. They consist of little more than a regurgitation of his legal arguments interspersed with pure, and immaterial, speculation and conclusory statements. Consequently, they do not provide any factual basis to support the plaintiff's claims or survive summary judgment. *See, e.g.*, *Burke v. Royal Ins. Co.*, 39 F. Supp.2d 251, 257 (E.D.N.Y. 1999) (noting that a "bald assertion, made without any evidentiary support, is not sufficient to overcome a motion for summary judgment." (quotation marks omitted)).

---

[1] Those materials include the plaintiff's Memorandum of Law in Support of a Claim that the Law Does Not Entitle the Defendant to Judgement [sic] in Her Favour [sic], Note to Court, Plaintiff's Counter-Affidavit, Plaintiff's Counter-Affidavit of Attorney Melchionne's Affidavit, Local Rule 56(a)2 Statement and Plaintiff's Emphatic Objection to Memorandum in Support of Motion for Summary Judgment.

Moreover, the plaintiff's opposition materials are severely untimely. Pursuant to the schedule this Court set, the Defendant filed her Motion for Summary Judgment with the appropriate supporting materials on February 25, 2005. March 17, 2005 was the initial deadline for the *pro se* plaintiff to file an opposition to that motion. The plaintiff did not file an opposition by that date. Instead, he filed a motion for an extension of time of "about" 60 days in which to seek counsel—despite this Court having already granted the plaintiff additional time to seek counsel over a year before the plaintiff's motion and, in so doing, indicated that no further extensions would be granted for that reason (see Docket ## 35 & 37)—or to oppose the defendant's motion. This Court denied that motion, but "[i]n deference to the plaintiff's pro se status . . . sua sponte g[ave] him until May 2, 2005 to file his opposition, after which date he will be precluded from filing one." (Docket ## 72) (emphasis added).

The plaintiff did not file an opposition by May 2, 2005, as this Court ordered. Instead, he waited until July 5, 2005—over two months after the firm deadline this Court set—to file his opposition materials. Those materials are clearly untimely and this Court should not consider them.[2] The plaintiff was twice (once by the Court and once by the defendant) given explicit and formal notice of the consequences of a failure to properly respond to the defendant's motion and this Court made patently clear that the plaintiff

---

[2] The plaintiff's "Note to Court" indicates that he would seek to avoid the severe lateness of his opposition based on the fact that this Court did not rule on his second, and last, motion for reconsideration of the denial of his request for an extension of time until June 14, 2005. Even aside from the utter lack of merit of those reconsideration motions (particularly the second, which was essentially duplicative of the first), it should be noted that the plaintiff did not file his opposition material until July 5, 2005—three weeks after even that later date.

2

would "be precluded from filing" an opposition after May 2, 2005. The plaintiff failed to meet that deadline and should bear the consequences.

Ultimately, for the reasons set forth in the defendant's summary judgment materials, there is simply no basis in law or fact to conclude that any of the plaintiff's federally guaranteed rights were violated. Moreover, even if any such right were violated, Ms. O'Connell's actions are certainly protected by absolute and qualified immunity—as this Court correctly recognized in dismissing the plaintiff's initial complaint, Ms. O'Connell was carrying out a judicial function on direction of the court and her actions were certainly objectively reasonable. This type of harassing litigation is precisely what the immunity doctrines are designed to protect against. *Cf. DiBlasio v. Novello*, 344 F.3d 292, 301 (2d Cir. 2003) (noting that "absolute immunity is designed to 'free[] the judicial process of the harassment or intimidation' associated with collateral litigation" (quoting *Forrester v. White*, 484 U.S. 219, 226 (1988)).

## **CONCLUSION**

For all of the foregoing reasons, the Defendant requests that this Court grant summary judgment in her favor.

DEFENDANT

MAURA O'CONNELL

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY: /s/ Robert J. Deichert
Robert J. Deichert
Assistant Attorney General
Federal Bar No. ct24956
55 Elm Street
P.O. Box 120
Hartford, CT 06141-0120
Tel: (860) 808-5020
Fax: (860) 808-5347
Robert.Deichert@po.state.ct.us

## CERTIFICATION

I hereby certify that a true and accurate copy of the foregoing Defendant's Reply and Objection to the Plaintiff's Materials Untimely Submitted in Opposition to Summary Judgment was served in accordance with Rule 5(b) of the Federal Rules of Civil Procedure by first-class mail, postage prepaid, on this 7th day of July, 2005 to:

Ben Gyadu
P.O. Box 4314
Waterbury, CT 06704

/s/ Robert J. Deichert
Robert J. Deichert
Assistant Attorney General

4