Page 17

of Law based upon the material facts not in dispute" the same defendant, however, states: "I don't

remember whether or not in this case the execution form had been stamped before I received it, or whether I had file stamped it after I had signed it."

Defendant continues the CONTRADICTORY and DECEPTIVE claims as ff: "I don't remember when in the day of November 2, 2001, that I signed the execution of ejectment, or how long it took me to review the court records before signing it."

This is where the defendant declares at page 8 that her "normal work schedule is from 8:15 a.m. to 5pm." and therefore if even Attorney Melchienne was

Page 18

not required to apply for the Ejectment Order and so applying for the Ejectment Order is not part of any consideration, the defendant would know that, for the Memorandum Of Decision dated the 1st Nov., 2001, without which she could NEVER have issued the Ejectment Order, to be filed at the Clerks' Office after 4 p.m. on the 1st Nov., 2001, the longest time that it would take her to issue the Ejectment Order would be from the time that the Memorandum Of Decision was filed at the Clerks' Office on the 1st Nov., 2001, if for some reason the Memorandum Of Decision was given to her directly to issue the Ejectment Order forthright, to 5 p.m. that day, 1st Nov., 2001, plus her normal work schedule time of 8:15 a.m. to 5 p.m., on the 2nd Nov., 2001 or the following day. As it would

Page 19

be discovered, the defendant has put forth a
DELIBERATE BAD-FAITH affidavit so that she
could achieve the outcome desired and must be
sanctioned accordingly.
   If defendant DOES NOT KNOW this, DOES NOT remember that, then the
case must go to trial.
      This is not to mention the fact that while
defendant states that:
           " Mr Gyadu did not appeal
the Courts ruling granting Bella Vista's motion to
re-open" and that according to the CT Rules of
Appellate Procedure, "an appeal must be filed
within twenty days of the date notice of the
judgement or decision is given", the plaintiff
moved to set aside as VOID, for lack of jurisdiction,
the Order that granted the Motion To Re-Open, as
the Memorandum Of Decision declares but the

Page 20

defendant in her ambition to lawlessly issue

an Ejection Order for Attorney Melchionne to

cause harm to plaintiff, as alleged, DID NOT even

allow the case to go to judgement before issuing

the Ejectment Order let alone allowing the

20 days allowed for an appeal to expire before

issuing the Ejectment Order. Please, see the
last sentence at page 3 of defendants EXHIBIT 5; Case went to judgement
on the 2nd Nov., 2001.

As it would clearly be discovered,

the defendant has put forth a BAD-FAITH

affidavit in support of a BAD-FAITH Motion For

Summary Judgement in an effort to conceal the

INCOMPREHENSIBLE, MALICIOUS alleged acts

to MIS-LEAD the Court to avoid any trial of the

action and must be SANCTIONED for the DECEPTION

Page 21

From page 6 to page 8 of the affidavit, the defendant, having no defense against the fact that the filing date stamp of 4:49 p.m., the 2nd Nov., 2001, indicates that the application for the Ejectment Order was filed on the 2nd Nov., 2001 at 4:49 p.m., 11 minutes to closing time at 5 p.m., puts forth Immaterial, VAGUE, AMBIGUOU, CONTRADICTORY, DECEPTIVE claims in an effort to create confusions and doubts to MIS-LEAD the Court to achieve the desired outcome; a filing date stamp indicates when a document was filed.

Defendant states the following at page 8:

"I did not know that Attorney Melchionne was coming down to the Clerks office at closing time as alleged, and I don't recall that he even came down to our office the day

Page 22

I signed the execution."

She Continues at page 11 the ff:    " I did not Conspire

with the plaintiff or its attorney to do anything unlawful –

– – – – – – or act dishonestly or maliciously – – "

The Memorandum Of Decision dated the

1st Nov., 2001, without which an Ejectment Order

Could NEVER, legally, be applied for let alone be

issued was filed after 4 p.m. getting to closing time

at 5 p.m. on the 1st Nov., 2001

Attorney Melchienne was the one

who applied for the Ejectment Order from the defen-

dant and the one the defendant mailed the

Execution Order to

The defendant claims at paragraph 8 of the affidavit

Page 23

that the 8 conditions that she enumerates under that paragraph 8 have to be "satisfied and met" before she could issue the Ejectment Order

In considering all the 8 conditions that have to be "satisfied and met" against a file before an Execution Order could be issued, it would clearly be discovered that the defendant, under normal circumstances, could NEVER complete checking all the 8 conditions against even just one out of the 7 volumes which the file consists of, within the 24 hrs of filing of the Memorandum Of Decision if even the Memorandum Of Decision was given to her directly from the judges chambers and she also did not go home and certainly she could NEVER have completed anything within eleven (11) minutes of the

Page 24

filing of the application for Ejectment

At the face of the fact that she defendant could NEVER, within 24hrs complete reviewing the 7 Volume file against all the 8 conditions that, she said, have to be "Satisfied and met" before an Ejectment Order Could be issued, the defendant goes on further to claim that she not only reviewed the 7 Volume file against all the 8 conditions that have to be met and satisfied but she also reviewed the Memorandum of Decision, reviewed the State Statutes and still had time within that 24hrs of the filing of the Memorandum Of Decision and within eleven (11) minutes of the filing of the application for Ejectment to check with the Deputy Chief Clerk    As it

Page 25

would clearly be discovered, it would NEVER be possible within 24 hrs of the filing of the Memorandum Of Decision let alone 11 minutes of the filing of the application for Ejectment, for the defendant to do any of those she claims she did before issuing the Ejectment Order

the defendant is only making up concocted claims for a defense in her efforts to MIS-LEAD the Court to achieve the outcome desired and must be sanctioned accordingly.

As plaintiff declared above, the defendant DID NOT even allow the case to go to judgement before issuing the Ejectment Order, in her ambition to have an Ejectment Order on file and thereby

Page 26

fraudulently confer an absolute title of the property upon Bella Vista Condos and make it futile for plaintiff to exercise his appeal rights, e.g. move to open the case, to attempt to retain the title of the property upon receiving a copy of the Memorandum Of Decision

And so while the defendant claims that she "did not treat Mr Gyadu any differently than anyone else who was in his legal situation, did not discriminate against him, did not act dishonestly or maliciously", this was precisely what she did.

Infact, in 1998 when the plaintiff was applying for an Execution Order the defendant returned the application form on the

Page 27

grounds that the file was not riped to issue an
Execution Order against it.

The plaintiff had to re-submit the
application before the Execution Order was finally
issued by the defendant in 8 days against even
a thin file of only one volume.

In the situation in question it is
not only that the defendant failed to return the
application form when the file was not riped
to issue an Ejection Order against it but she
took a step further to issue the Execution Order
before the case even went to judgement

As it would therefore be discovered
her claim that "there was absolutely nothing
unlawful about issuing" the Ejectment Order

Page 28

represents nothing but a DECEPTIVE, FRAUDULENT claim put forth just to PRE-JUDICE and MIS-LEAD the Court to achieve the desired outcome at the expense of the plaintiff

This is not to mention the fact that while the defendant swears an affidavit to support Attorney Melchionne's sworn claim that he filed the application at a Court room hearing and so there would not be any filing date stamp on the form, the same defendant could not, however, state forthright that the application for Ejectment Order form was not having any filing date stamp on it when she received it even though that is what is expected of her since the application form

Page 29

that she received was supposed to be the application form from Attorney Melchrionne.

The defendant, instead, states the ff:

"I don't remember whether or not in this case the execution form had been stamped before I received it, or whether I had file stamped it after I had signed it " in her effort to attempt to MIS-LEAD the Court to achieve the desired outcome, having no defense against the fact that the filing date stamp of 4:49 p.m., the 2nd Nov., 2001, indicates that the application for Ejectment Order was filed the 2nd Nov., 2001, at 4:49 p.m. and therefore she issued the Ejectment Order within eleven (11) minutes of the filing of the application for Ejectment Order. Additionally, while

Page 30

the defendant claims that she issued the Ejectment Order on the 2nd Nov., 2001, Attorney Melchionne claims at page 2 of his Sworn Affidavit that the Ejectment Order was issued before even the 1st Nov., 2001 when the Memorandum Of Decision was issued

These kinds of DECEPTIVE, CONTRADICTORY claims put forth just to attempt to MIS-LEAD and PRE-JUDICE the Court to achieve the desired outcome demand not only that the action be tried but also demand that Sanctions be imposed upon Attorney Melchionne and the defendant, Maura O'Connell

And as much as Attorney Melchionne claims that he "did not deliver the application for the Ejectment Order on or after November

Page 31

1, 2001, because it had already been filed with the Court" and the defendant claims that she does not recall that Attorney Melchionne came to the Clerks' Office on the 2nd Nov., 2001, the application form on file <u>somehow</u> got to the defendant on or after 4:49 p.m. on the 2nd Nov., 2001, before she could issue the order between that 4:49 p.m. and 5 p.m., the 2nd Nov., 2001, 11 minutes to closing time.

The plaintiff prays the Motion For Summary Judgement would be denied forthwith to allow the case to go to trial for the defendant to show how she got the application form and how there are those blatant inconsistencies and if she did not cause the alleged MALICIOUS acts

Page 32

against the plaintiff

While Attorney Melchionne claims that he filed the application for the ejectment order at a Court room hearing on or about Sept 24, 2001, when he "appeared before the Court for argument on several motions in that case by handing it to the Court room clerk - - -", he did not allow a decision on any of those alleged motions before applying for the Ejectment Order, anxious to fraudulently and lawlessly throw the plaintiff out of his home and property onto the streets, homeless; Attorney Melchionne did not make any mention about the plaintiff's presence at that Court room hearing and, if a hearing of such did exist why he did not give

Page 33

a copy of that document or at least show the
plaintiff that document, if even there was any
filing of such, since one cannot just put documents
in a file as she or he pleases without going
through the necessary procedure; he did not
identify the court room clerk who received the
document and did not identify any of those motions
that, according to him, appeared for a hearing.

Attorney Melchionne claims at
paragraph 9 of his affidavit that      while the
Superior Court was yet to make a ruling on whether
or not the Court's granting of the Motion To Open and
Set New Law Days was VOID for lack of jurisdiction,
the defendant issued the Ejectment Order
This

Page. 34

represents Attorney Melchionno's efforts to defend the MALICIOUS, LAWLESS act by which the defendant issued the Ejectment Order within eleven (11) minutes of filing the application for the Ejectment Order

The defendant must not be allowed to change or create any doubt or confusions about the fact that a filing date stamp indicates when a document was filed

CONCLUSION

based upon all the above, the plaintiff prays (i) the defendant, Maura O'Connell and Attorney Eugene Melchionne would be sanctioned for submitting a BAD-FAITH affidavit in support of a BAD-FAITH Motion For Summary Judgement intended to avoid a trial of the action that was instituted against the alleged DELIBERATE MIS-CONDUCT of the

Page 35

defendant (ii)
                    the Motion For Summary Judgement
would be denied forthwith to allow a trial of
the action so that the defendant could justify
the alleged MALICIOUS, LAWLESS act and
Attorney Melchionne and the defendant, Maura
O' Connell, would have a forum by which they would
explain why the defendant claims that the
Ejection Order was issued on the 2nd Nov., 2001,
                                    claims
but Attorney Melchionne, under Oath that the
Execution Order was issued before the Memo-
randum Of decision was even issued on the
1st Nov., 2001; the alleged DISCREPANCY
calls for a trial of the action

Respectfully Submitted.
BEN. GYASU (851:)
P.O. BOX 4314, Waterbury, CT 06704.

CERTIFICATION

This is to certify that a copy of the fore-going
was mailed to the State attorney general,
attn: Attorney Daniel Schaeffer, 55 Elm Str.,
Hartford, CT 06106 .

Sincerely,
Ben. Gyadu,
P.O. BOX 4314,
Waterbury, CT 06704

MANDATE

01mc-123; 01mc-366

Garfinkel, J.

# United States Court of Appeals

FOR THE

SECOND CIRCUIT

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the United States Courthouse, Foley Square, in the City of New York, on the 18th day of April two thousand and two,

Present:

Hon. James L. Oakes,

Hon. Dennis Jacobs,

Hon. Guido Calabresi,

*Circuit Judges.*

UNITED STATES COURT OF APPEALS
FILED
APR 18 2002
Roseann B. MacKechnie, Clerk
SECOND CIRCUIT

Bella Vista Condos,

Plaintiff-Appellee,

v.                                                                              01-7855

Benjamin F. Gyadu,

Respondent-Appellant.

Appellant has filed, *pro se*, motions seeking appointment of counsel and to consolidate his appeals. Upon due consideration, it is hereby ORDERED that the motion for appointment of counsel is denied because appellant has not made a showing of likely merit, *see* Cooper v. A. Sargenti Co., 877 F.2d 170, 172-74 (2d Cir. 1989), and it is FURTHER ORDERED that the appeal is dismissed because the appeal lacks an arguable basis in fact or law. *See* Neitzke v. Williams, 490 U.S. 319, 325 (1989); 28 U.S.C. § 1915(e)(2). It is FURTHER ORDERED that appellant's motion to consolidate appeals is denied as moot because both appeals, from the orders in the district court actions docketed in the court under 01mc-123 and 01mc-366, were docketed in this Court under 01-7855.

On December 10, 1999, this Court issued a leave-to-file sanction order against appellant. *See* Gyadu v. Hartford Ins. Co., 197 F.3d 590, 591-92 (2d Cir. 1999). While such order did not apply to appeals filed by appellant "from a judgment rendered against [appellant] as a defendant," it is ORDERED that such leave-to-file sanction order is hereby amended to apply to any appeal filed, after the date of issuance of this order, in this Court where appellant initiated the federal court action. The leave-to-file sanction order therefore applies, but is not limited, to actions where, as here, appellant has initiated the federal court action by removing to a federal court a state court action in which he is a named defendant. In all other respects, the December 10, 1999 leave-to-file sanction order shall

A TRUE COPY

APR 18 2002 Roseann B. MacKechnie, CLERK

by _____

— ISSUED AS MANDATE: 4/18/02 —

commenced by the filing of a complaint, even if the filing fees are not paid to the clerk at the time of the filing.[22]

### [7]—Complaint Filed With In Forma Pauperis Petition Constitutes Commencement of Action

A pro se plaintiff who cannot afford to pay court costs and fees may commence an action without paying costs and fees. These actions, called actions *in forma pauperis,* from the Latin "in the character of a pauper," or "poor person," may proceed only by permission of the court. Forma pauperis actions are authorized by statute.[23]

The filing of a complaint along with an in forma pauperis petition constitutes commencement of the action under Rule 3.[24] For example, in *Stephenson v. CNA Fin. Corp.,*[25] the defendant maintained that the action was barred by the statute of limitations because the applicable limitations period had expired prior to the date on which the court granted the plaintiff's in forma pauperis petition. The court rejected the defendant's argument, holding that the action was deemed to

---

[22] **Action commenced without payment of fees.** *See* Rogers ex rel. Jones v. Bowen, 790 F.2d 1550, 1552 (11th Cir. 1986) (action for judicial review of decision denying child insurance benefits commenced by filing regardless of untimely payment of required filing fee).

| | |
|---|---|
| *4th Circuit* | *See* Wells v. Apfel, 103 F. Supp. 2d 893, 895-899 (W.D. Va. 2000) (civil action was commenced when first filed, even though filing fee was not paid until later time; absent local rule or standing order requiring advance payment of filing fees, there was no legal authority for elevating payment of filing fee to jurisdictional requirement). |
| *7th Circuit* | *See* Johnson v. Brown, 803 F. Supp. 1414, 1418-1419 (N.D. Ind. 1992) (racial discrimination action commenced when complaint filed, even though filing fee not paid until two weeks later). |
| *11th Circuit* | *See* Rogers ex rel. Jones v. Bowen, 790 F.2d 1550, 1552 (11th Cir. 1986) (action for judicial review of decision denying child insurance benefits commenced by filing regardless of untimely payment of required filing fee). |

[23] 28 U.S.C. § 1915(a), the statutory authorization for in forma pauperis actions, provides, in pertinent part:

Subject to subsection (b), any court of the United States may authorize the commencement, prosecution, or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner [*sic*] possesses [*and*] that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.

[24] *See* 28 U.S.C. § 1915.

[25] Stephenson v. CNA Fin. Corp., 777 F. Supp. 596, 598-599 (N.D. Ill. 1991).

(Matthew Bender & Co., Inc.) (Rel.130–6/01 Pub.410)