Page 21

was a FALSE claim intended to MIS-LEAD and PRE-JUDICE the Court to achieve the desired outcome and DEFRAUD the plaintiff of Justice due him.

As another example the plaintiff introduced a copy of the form for the application of the Ejection Order to prove to the Court that the defendant applied for the Ejection Order at 4:49 p.m. on the 2nd Nov., 2001, according to the filing date stamp, and by 5 p.m. that the office closes, the defendant, in her ambition to deprive the plaintiff of his appeal rights, as plaintiff alleged, had issued the Ejection Order against a huge file of seven separate volumes in that eleven (11) minutes, ABANDONING her specified duties for issuing the Ejection Order,

Page     Page 22

so that it would be possible to issue the Ejection Order in that eleven (11) minutes and be assured that *before* the plaintiff received a copy of the Memorandum Of Decision and had any chance to "TORPEDOE" their ILL-CONCEIVED plans, an absolute title of the plaintiff's home and property had already been conferred upon Bella Vista Condos and at that juncture, per Section 49-15 of the Ct Gen. Statute Annotated, the plaintiff could not do anything, whatsoever, to save his home and property and the property would belong to Bella Vista Condos.

As it would clearly be discovered, it is extremely difficult to understand the court's action which OVER-LOOKS or DIS-REGARDS the Appendix to issue an Order which subjects the plaintiff to GROSS MANIFEST INJUSTICE

This is not to mention the

fact that the Court denied the plaintiff's request to file a copy of Section 4-3 of the CT Practice Book when plaintiff wanted that section as an evidence which proves to the Court that it is ILLEGAL for the defendant to issue an Ejectment Order on an application form that came to her without a Court Stamp and therefore the defendant's claim that she might have issued the Ejectment Order on an application form that came to her without a Court Stamp, should be declared ILLEGAL

It follows therefore that, while the Court granted the defendant's Motion For Summary Judgement on the grounds that "the plaintiff failed to introduce or refer to

Page 24

any evidence to properly dispute the facts recited by defendant" when plaintiff introduced or referred to such an evidence to properly dispute the facts recited by the defendant, the Court refused the filing of such evidence on the grounds that the case is in a federal court but not State court even though the kinds of the evidence shows clearly the alleged UNLAWFUL acts of the defendant without which the plaintiff would NEVER have lost his home and property to a FRAUDULENT fore-closure action of a Condominium Association which was not even doing the duties required to warrant collecting fees against those duties and services it did not do or provide, causing the plaintiff all kinds of resultant problems including Sanitary problems and false police arrest

And while the Court held the

Page 25

pro se plaintiff's pleading to such a stringent standard, as the prevailing facts indicate, the U.S. Magistrate states "plaintiffs who proceed pro se are entitled to have their pleadings held to "less stringent standards than formal pleadings drafted by lawyer."

Q3 & Q4, 7 & 9

The U.S. Magistrate Over-looked And Dis-regarded The Material Facts Of The Complaint And thereby GROSSLY MIS-INTERPRATED The Complaint Without Which The Summary Judgement Would NEVER BE CONSIDERED LET ALONE BE GRANTED

The plaintiff alleged throughout the complaint that the defendant and Attorney Melchionne

Page 26

determined to deprive the plaintiff of his home and property and throw him out onto the streets, regardless of the law, and knowing that per section 49-15 of the CT Gen. Statute Annotated, if the plaintiff did not file any papers challenging the Memorandum Of Decision before an Ejectment Order is issued to confer an absolute title of the property upon Bella Vista Condos., the plaintiff would not be able to exercise his appeal rights to save his home, once an Ejectment Order had been issued, decided to COLLABORATE and CONSPIRE to issue the Ejectment Order before there was any chance for plaintiff to receive a copy of the Memorandum Of Decision let alone a chance to respond to it and in the process "TORPEDOE" their ILL-CONCEIVED, MALICIOUS plans.   The plaintiff continued that due

Page 27

to this ILL-CONCEIVED, MALICIOUS plan of the defendant and Attorney Melchionne, Attorney Melchionne was able to receive a copy of the notice of the Memorandum of Decision in less than 24 hours of the filing of the Memorandum of Decision to turn around to prepare the application for the Ejectment Order and rush down the Clerks' Office to file it

    The plaintiff concluded that the Court Stamp indicated that the application was filed at 4:49 p.m., 11 minutes to closing time at 5 p.m. on that day, the 2nd Nov., 2001

    The plaintiff added that as a result of the defendant's Collaboration and Conspiracy with Attorney Melchionne to have an Ejectment Order on file and confer an absolute title of the property

Page 28

upon Bella Vista Condos before closing time at 5p.m., the 2nd Nov., 2001, it was not only that the defendant was able to receive the application form at the time of filing, apparently waiting for it, but the defendant ABANDONED her specified duties so that it would be possible to issue the Ejectment Order within that eleven (11) minutes before closing time at 5p.m. that day, 2nd Nov., 2001, and so within that 11 minutes to closing time, the defendant was able to issue the Ejectment Order against the huge file of 7 separate volumes when the file was not even "riped" to issue an Ejectment Order against it as there were pending appeals and those that were yet to be pursued.

The plaintiff stated that as a result of this MALICIOUS act and lawless act by the time

Page 29

the plaintiff received a copy of the Memorandum of Decision he had already lost the title of his property to Bella Vista Condos and per Section 49-15 of the CT Gen. Statute Annotated, it was FUTILE for him to exercise his appeal rights to attempt to retain the title and save his home and property.

The plaintiff additionally put forth this alleged MALICIOUS, LAWLESS act of the defendant and Attorney Melchionne at the very beginning of his Objection. Please see Page 7 to 9 of the Objection. The Magistrate, however, over-looked or dis-regarded all that and granted the Motion for Summary Judgement without any mention of the alleged MALICIOUS, MALUM IN SE act by which the defendant

Page 30

and Attorney Melchionne FRAUDULENTLY employed the provisions of Section 49-15 of the CT Gen. Statute Annotated to deprive the plaintiff of his appeal rights so that the plaintiff would lose his home and property.

(1) The Magistrate states at page 2 the ff:

"Plaintiff alleges defendant Maura O'Connell, improperly signed an order of ejectment after a judgement of strict fore-closure had entered against the plaintiff."

As it would be discovered, this statement DOES NOT represent the MALICIOUS, LAWLESS act the plaintiff complained of

(2) The Magistrate states at page 3 the ff:

"The plaintiff appealed the judgement of strict

Page 31

fore-closure but his appeals, including one to the Supreme Court of the United States, were all unsuccessful."

Plaintiff did not appeal the judgement of strict fore-closure to the Supreme Court of the United States. Plaintiff provided, in the Appendix of his Rule 56(a) 2 Statement, a copy of the Sanctions Order dated the 23rd Oct., 2000, to prove to the Court that he did not appeal the strict fore-closure judgement to the CT Supreme Court let alone the U.S. Supreme Court. The Magistrate however, over-looked that This represents yet another mis-interpretation of the action.

3. The Magistrate states at page 3 and 4 of the Recommended Ruling that counsel for Bella Vista Condos, Attorney Melchionne, appeared in Court on September 24, 2001, to argue the Motion To Set Aside The Judgement and Motion To Stay Proceedings

Page 32

Attorney Melchionne, however, did not identify the motions he appeared before the Court for its argument, as the Magistrate states

Attorney Melchionne states at the front page of his Affidavit that he "appeared before the Court for argument on several motions in that case...."

The Magistrate thereby mis-interprets the case

4. The Magistrate states at page 4 and 5 of the Ruling the ff: "At some point after the Memorandum of Decision was issued, the defendant began the procedure for issuing the Execution Of Judgement. (Doc. #59 at #30.) She followed her normal procedure in such situations, which includes confirming ."

The Magistrate then lists the

Page 33

number of specified duties the defendant performs before an Ejectment Order could be issued.

The Magistrate concludes that after the defendant performed all the 8 individual specified duties against the huge file of 7 separate volumes the defendant went on further to consult with the Deputy Chief about the application and the Deputy Chief reviewed everything with the defendant and confirmed that the ejectment form was lawful and directed her to issue it

The Magistrate therefore over-looks the fact that it was "at some point <u>after</u> the Memorandum of Decision was issued before the defendant began the procedure for issuing the Execution of Judgement" and so for the fact that the Memorandum of Decision was filed at the clerks' Office after 4p.m.

Page 34

on the 1st Nov., 2001, and the defendant issued the Ejectment Order on the 2nd Nov., 2001, the defendant is claiming under Oath that in less than 24 hours of the filing of the Memorandum of Decision, when the office even closed in less than an hour after the Memorandum of Decision was filed, she was somehow able to do all what she claimed she did before she issued the Ejectment Order when infact under normal circumstances, without all the alleged FRAUDULENT, MALICIOUS acts, she could NEVER have issued the Ejectment Order, as she did, especially in considering the fact that the same defendant took eight (8) consecutive days to issue an Execution Order for plaintiff against even a thin file of only one Volume

As it would clearly be discovered but

Page 35

for the defendants ambition to COLLABORATE and CONSPIRE with Attorney Melchionne to have an Ejectment Order on file to deprive the plaintiff of his appeal rights so that the plaintiff would lose his home and property to Bella Vista Condos., as alleged, it would NEVER have been possible that in less than 24 hours, when there was even a closing time, the defendant was able to receive a copy of the Memorandum Of Decision, as if it came to her directly from the Judge's Chambers, and somehow received it when she was not tied-up doing anything else and so within that same 24 hours reviewed the Statutes, reviewed the Memorandum Of Decision and performed all the 8 specified duties against the huge file of 7 separate volumes and still had time to review the form with the Deputy Chief Clerk. This is not

Page 36

to mention the fact that the file was not even "riped" to issue an Ejectment Order against it but for the defendant's ambition to cause the plaintiff the alleged harm, the defendant flouted every single law in her way and ignored anything that was in her way of achieving the MALICIOUS goal; there was a pending appeal at the 2nd Circuit and a pending complaint for Injunctive Relief at the District Court and for the fact that the defendant did not allow any time for plaintiff to receive a copy of the Memorandum of Decision to exercise his appeal rights the defendant cannot, in good-faith, state, for example, that no appeal is pending, no motion to re-open has been filed, that no stay of execution is in effect

At the face of all the facts

Page 37

which make it abundantly clear that there exist a dispute over the material facts of the case, the court by the U.S. Magistrate still granted the Motion for Summary Judgement to dispose of the action without trial to follow the District Court's initial ruling which dismissed the action after the Magistrate concluded that the initial complaint dismissed by the District Court is the same as the Amended Complaint; the U.S. Magistrate thus over-looked the fact that the the case was open after the Court discovered it was dismissed in error.

After deciding that the case should be disposed of as the District Court did initially, the Magistrate accepted everything the defendant put forth for a fact and the plaintiff's <u>cry</u> to the Court

Page 38

against the defendants BAD-FAITH acts which deprive the plaintiff of Justice due him, did not make any difference

For example, the Magistrate states the ff: at page 4 of Ruling.

"It is the defendants practice, when receiving such forms in the courtroom where no stamp is available, to wait and stamp the form after she ultimately signs it"

The defendant put forth this FRAUDULENT, DECEPTIVE claim to defend herself against the plaintiff's allegation that she issued the Ejectment Order within the eleven (11) minutes of filing the application

As it would clearly be discovered, under normal circumstances without any ill-conceived motives, anybody who would receive

Page 39

a document under such situation would stamp it upon receipt to indicate when it was received rather than leave it unstamped for a future date as the defendant puts forth just to attempt to conceal the fact that the application form was filed eleven (11) minutes to closing time as the Court Stamp indicates

If at one section of the Court system people can just claim that they filed a document without any proof except what they say with an Affidavit, as Attorney Melchionne claims he did, then they can manipulate the filing system as the defendant and Attorney Melchionne are doing and the whole purpose of the filing system would be defeated

THE U.S. MAGISTRATE ALLOWED FRAUDULENT CLAIMS OR ASSERTIONS FOR A DEFENSE

A Court Stamp on

Page 40

a document is supposed to indicate" the time when it is filed" as stated by Section 4-3 of the CT Practice Book whose copy is enclosed for any reference that might be needed.

The defendants claim that a court stamp on an Ejectment Order she issues would, in some situations, not indicate the time when the application was filed but rather the time when the defendant issued the Ejectment Order because, according to the defendant, there are instances where applications come to her without a Court Stamp and in those instances instead of returning those documents for a defect as the defendant did with the plaintiff's 1998 application, or, at the defendant claims she rather keeps those documents and stamps them.