[470 US 532]

CLEVELAND BOARD OF EDUCATION, Petitioner

v

JAMES LOUDERMILL et al.

---

PARMA BOARD OF EDUCATION, Petitioner

v

RICHARD DONNELLY et al.

---

JAMES LOUDERMILL, Petitioner

v

CLEVELAND BOARD OF EDUCATION et al.

470 US 532, 84 L Ed 2d 494, 105 S Ct 1487

[Nos. 83–1362, 83–1363, and 83–6392]

Argued December 3, 1984. Decided March 19, 1985.

**Decision:** Tenured public employees held entitled to pretermination hearing.

SUMMARY

In the first of two consolidated cases, a security guard employed by a board of education was dismissed on grounds that he had failed to disclose a prior felony conviction on his job application. In the second case, a school bus mechanic was discharged because he failed an eye examination. Both employees were classified civil servants who could be terminated only for cause and both were entitled to posttermination administrative review of the decisions. However, neither employee was afforded a pretermination opportunity to respond to the charges. Subsequent complaints in the United States District Court for the Northern District of Ohio were dismissed, the District Courts concluding that the statutory procedures for dismissal satisfied due process. The United States Court of Appeals for the Sixth Circuit

Briefs of Counsel, p 983, infra.

reversed, findi
nation hearing

On certiorar
In an opinion
Powell, Stevi
and IV, and
employees hac
not be defined
that the emplc
but not to a fu
delay in the s
separate due p

Marshall,
before a decis
should be ent
present witne
in testimonial

Brennan, J
that the recor
on the issue
should be rem

Rehnquist,
ment does nc
limited form
"property rig]

reversed, finding that the discharged employees were entitled to a pretermination hearing and thus had been deprived of due process (721 F2d 550).

On certiorari, the United States Supreme Court affirmed and remanded. In an opinion by White, J., joined by Burger, Ch. J., and Blackmun, Powell, Stevens, and O'Connor, JJ., by Brennan, J., as to Parts I, II, III, and IV, and by Marshall, J., as to Part II, it was held: (1) that the employees had a property interest in continued employment which could not be defined by the procedures provided for its deprivation (Part II); (2) that the employees were entitled to a pretermination opportunity to respond but not to a full evidentiary hearing (Parts III & IV); and (3) that a 9-month delay in the security guard's posttermination hearing did not constitute a separate due process violation (Part V).

Marshall, J., concurred in Part II and in the judgment, stating that before a decision is made to terminate an employee's wages, the employee should be entitled to confront and cross-examine adverse witnesses and to present witnesses on his own behalf whenever there are substantial disputes in testimonial evidence.

Brennan, J., concurred in part and dissented in part, expressing the view that the record was insufficiently developed to permit an informed judgment on the issue of administrative delay and that the security guard's case should be remanded for further evidentiary proceedings.

Rehnquist, J., dissented, expressing the view that the Fourteenth Amendment does not support the conclusion that the state's effort to confer a limited form of tenure upon the employees resulted in the creation of a "property right" in their employment.

ıation hear-

## HEADNOTES

Classified to U.S. Supreme Court Digest, Lawyers' Edition

**Constitutional Law § 800.3 — due process — right to pretermination opportunity to respond**

1a–1f. A public employee who can be discharged only for cause and who is entitled to a posttermination administrative hearing under state law must also be given a pretermination opportunity to respond to the charges as a matter of due process; the governmental interest in immediate termination does not outweigh the private interest in retaining employment and the risk of an erroneous termination. (Marshall, J., dissented in part from this holding; Rehnquist, J., dissented from this holding.)

**Civil Service § 2; Constitutional Law § 717 — due process — property interest in continued employment**

2a, 2b. A state statute providing that classified civil service employees

### TOTAL CLIENT-SERVICE LIBRARY® REFERENCES

15A Am Jur 2d, Civil Service § 68

16 Federal Procedure, L Ed, Government Officers and Employees §§ 40:461 et seq.

10 Federal Procedural Forms, L Ed, Government Officers and Employees §§ 35:31 et seq.

24 Am Jur Trials 421, Defending Civil Service Employee from Discharge

USCS, Constitution, 14th Amendment

RIA Employment Coordinator ¶ EP-22,631

US L Ed Digest, Civil Service § 2; Constitutional Law §§ 528.5, 529, 717, 759, 800.3

L Ed Index to Annos, Civil Service; Due Process of Law; Officers

ALR Quick Index, Civil Service; Discharge from Employment; Due Process of Law; Public Officers and Employees

Federal Quick Index, Civil Service; Discharge from Employment

**Auto-Cite®:** Any case citation herein can be checked for form, parallel references, later history and annotation references through the Auto-Cite computer research system.

### ANNOTATION REFERENCE

Termination of public employment: right to hearing under due process clause of Fifth or Fourteenth Amendment—Supreme Court cases. 48 L Ed 2d 996.

are entitled to retain their positions during good behavior and efficient service and prohibiting dismissal except for misfeasance, malfeasance, or nonfeasance in office creates a property interest in continued employment which such employees may not be deprived of without due process. (Rehnquist, J., dissented from this holding.)

**Constitutional Law § 529 — due process — substantive and procedural rights**

3a, 3b. A substantive due process right in property cannot be defined by the procedures provided for its deprivation, since the categories of substance and procedure provided by the due process clause of the Fourteenth Amendment are distinct. (Rehnquist, J., dissented from this holding.)

**Constitutional Law § 800.3 — due process — administrative delay**

4. A complaint by a discharged public employee alleging a violation of due process on grounds that his posttermination administrative proceedings took too long does not state a claim of a constitutional deprivation, where the employee offers no indication that his wait was unreasonably prolonged other than the fact that it took 9 months. (Brennan, J., dissented from this holding.)

**Constitutional Law § 528.5 — deprivation of liberty — accusation of dishonesty against public employee**

5a, 5b. A discharged public employee does not state a claim for an unconstitutional deprivation of liberty on grounds that an accusation of dishonesty hung over his head during posttermination administrative proceedings, where the employee fails to allege that the reasons for his dismissal were published.

## SYLLABUS BY REPORTER OF DECISIONS

In No. 83-1362, petitioner Board of Education hired respondent Loudermill as a security guard. On his job application Loudermill stated that he had never been convicted of a felony. Subsequently, upon discovering that he had in fact been convicted of grand larceny, the Board dismissed him for dishonesty in filling out the job application. He was not afforded an opportunity to respond to the dishonesty charge or to challenge the dismissal. Under Ohio law, Loudermill was a "classified civil servant," and by statute, as such an employee, could be terminated only for cause and was entitled to administrative review of the dismissal. He filed an appeal with the Civil Service Commission, which, after hearings before a referee and the Commission, upheld the dismissal some nine months after the appeal had been filed. Although the Commission's decision was subject to review in the state courts, Loudermill instead filed suit in Federal District Court, alleging that the Ohio statute providing for administrative review was unconstitutional on its face because it provided no opportunity for a discharged employee to respond to charges against him prior to removal, thus depriving him of liberty and property without due process. It was also alleged that the statute was unconstitutional as applied because discharged employees were not given sufficiently prompt postremoval hearings. The District Court dismissed the suit for

failure to state a claim on which relief could be granted, holding that because the very statute that created the property right in continued employment also specified the procedures for discharge, and because those procedures were followed, Loudermill was, by definition, afforded all the process due; that the post-termination hearings also adequately protected Loudermill's property interest; and that in light of the Commission's crowded docket the delay in processing his appeal was constitutionally acceptable. In No. 83-1363, petitioner Board of Education fired respondent Donnelly from his job as a bus mechanic because he had failed an eye examination. He appealed to the Civil Service Commission, which ordered him reinstated, but without backpay. He then filed a complaint in Federal District Court essentially identical to Loudermill's, and the court dismissed for failure to state a claim. On a consolidated appeal, the Court of Appeals reversed in part and remanded, holding that both respondents had been deprived of due process and that the compelling private interest in retaining employment, combined with the value of presenting evidence prior to dismissal, outweighed the added administrative burden of a pretermination hearing. But with regard to the alleged deprivation of liberty and Loudermill's 9-month wait for an administrative decision, the court affirmed the District Court, finding no constitutional violation.

*Held:* All the process that is due is provided by a pretermination opportunity to respond, coupled with post-termination administrative procedures as provided by the Ohio statute; since respondents alleged that they had no chance to respond, the District Court erred in dismissing their complaints for failure to state a claim.

(a) The Ohio statute plainly supports the conclusion that respondents possess property rights in continued employment. The Due Process Clause provides that the substantive rights of life, liberty, and property cannot be deprived except pursuant to constitutionally adequate procedures. The categories of substance and procedure are distinct. "Property" cannot be defined by the procedures provided for its deprivation.

(b) The principle that under the Due Process Clause an individual must be given an opportunity for a hearing *before* he is deprived of any significant property interest, requires "some kind of hearing" prior to the discharge of an employee who has a constitutionally protected property interest in his employment. The need for some form of pretermination hearing is evident from a balancing of the competing interests at stake: the private interest in retaining employment, the governmental interests in expeditious removal of unsatisfactory employees and the avoidance of administrative burdens, and the risk of an erroneous termination.

(c) The pretermination hearing need not definitively resolve the propriety of the discharge, but should be an initial check against mistaken decisions—essentially a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action. The essential requirements of due process

are notice
respond.
(d) The c
ministrativ
stitute a se
lation. The
quires prov
meaningful
lay stemme
oughness of
¶ 721 F2
manded.

Jame
1362 an
Robe
1362 an
Briefs

Justice W
ion of the C

[1a] In t
what prete
be accorded
can be disch

In 1979
Education, p
hired respo
as a security
cation, Lou
had never b
Eleven mon
routine exa
ment record
that in fac
convicted of
By letter d
the Board's
formed Loud
dismissed b
in filling ou
cation. Loud
an opportur
charge of di

are notice and an opportunity to respond.

(d) The delay in Loudermill's administrative proceedings did not constitute a separate constitutional violation. The Due Process Clause requires provision of a hearing "at a meaningful time," and here the delay stemmed in part from the thoroughness of the procedures.

721 F2d 550, affirmed and remanded.

White, J., delivered the opinion of the Court, in which Burger, C.J., and Blackmun, Powell, Stevens, and O'Connor, JJ., joined, in Parts I, II, III, and IV of which Brennan, J., joined, and in Part II of which Marshall, J., joined. Marshall, J., filed an opinion concurring in part and concurring in the judgment. Brennan, J., filed an opinion concurring in part and dissenting in part. Rehnquist, J., filed a dissenting opinion.

APPEARANCES OF COUNSEL

**James G. Wyman** argued the cause for petitioners in Nos. 83-1362 and 83-1363 and the respondents in No. 83-6392.

**Robert M. Fertel** argued the cause for respondents in Nos. 83-1362 and 83-1363 and the petitioner in No. 83-6392.

Briefs of Counsel, p 983, infra.

OPINION OF THE COURT

[470 US 535]

Justice **White** delivered the opinion of the Court.

[1a] In these cases we consider what pretermination process must be accorded a public employee who can be discharged only for cause.

I

In 1979 the Cleveland Board of Education, petitioner in No. 83-1362, hired respondent James Loudermill as a security guard. On his job application, Loudermill stated that he had never been convicted of a felony. Eleven months later, as part of a routine examination of his employment records, the Board discovered that in fact Loudermill had been convicted of grand larceny in 1968. By letter dated November 3, 1980, the Board's Business Manager informed Loudermill that he had been dismissed because of his dishonesty in filling out the employment application. Loudermill was not afforded an opportunity to respond to the charge of dishonesty or to challenge his dismissal. On November 13, the Board adopted a resolution officially approving the discharge.

Under Ohio law, Loudermill was a "classified civil servant." Ohio Rev Code Ann § 124.11 (1984). Such employees can be terminated only for cause, and may obtain administrative review if discharged. § 124.34. Pursuant to this provision, Loudermill filed an appeal with the Cleveland Civil Service Commission on November 12. The Commission appointed a referee, who held a hearing on January 29, 1981. Loudermill argued that he had thought that his 1968 larceny conviction was for a misdemeanor rather than a felony. The referee recommended reinstatement. On July 20, 1981, the

[470 US 536]

full Commission heard argument and orally announced that it would uphold the dismissal. Proposed findings of fact and conclusions of law followed on August 10, and Loudermill's attorneys were advised of the result by mail on August 21.

Although the Commission's decision was subject to judicial review in the state courts, Loudermill instead brought the present suit in the Federal District Court for the Northern District of Ohio. The complaint alleged that § 124.34 was unconstitutional on its face because it did not provide the employee an opportunity to respond to the charges against him prior to removal. As a result, discharged employees were deprived of liberty and property without due process. The complaint also alleged that the provision was unconstitutional as applied because discharged employees were not given sufficiently prompt postremoval hearings.

Before a responsive pleading was filed, the District Court dismissed for failure to state a claim on which relief could be granted. See Fed Rule Civ Proc 12(b)(6). It held that because the very statute that created the property right in continued employment also specified the procedures for discharge, and because those procedures were followed, Loudermill was, by definition, afforded all the process due. The post-termination hearing also adequately protected Loudermill's liberty interests. Finally, the District Court concluded that, in light of the Commission's crowded docket, the delay in processing Loudermill's administrative appeal was constitutionally acceptable. App to Pet for Cert in No. 83-1362, pp A36–A42.

The other case before us arises on similar facts and followed a similar course. Respondent Richard Donnelly was a bus mechanic for the Parma Board of Education. In August 1977, Donnelly was fired because he had failed an eye examination. He was offered a chance to retake the examination but did not do so. Like Loudermill, Donnelly appealed to the Civil Service Commission. After a year of wrangling about the timeliness of his appeal, the Commission heard

[470 US 537]

the case. It ordered Donnelly reinstated, though without backpay.[1] In a complaint essentially identical to Loudermill's, Donnelly challenged the constitutionality of the dismissal procedures. The District Court dismissed for failure to state a claim, relying on its opinion in Loudermill.

The District Court denied a joint motion to alter or amend its judgment,[2] and the cases were consolidated for appeal. A divided panel of the Court of Appeals for the Sixth Circuit reversed in part and remanded. 721 F2d 550 (1983). After rejecting arguments that the actions were barred by failure to exhaust administrative remedies and by res

1. The statute authorizes the Commission to "affirm, disaffirm, or modify the judgment of the appointing authority." Ohio Rev Code Ann § 124.34 (1984). Petitioner Parma Board of Education interprets this as authority to reinstate with or without backpay and views the Commission's decision as a compromise. Brief for Petitioner in No. 83-1363, p 6, n 3; Tr of Oral Arg 14. The Court of Appeals, however, stated that the Commission lacked the power to award backpay. 721 F2d 550, 554, n 3 (1983). As the decision of the Commission is not in the record, we are unable to determine the reasoning behind it.

2. In denying the motion, the District Court no longer relied on the principle that the state legislature could define the necessary procedures in the course of creating the property right. Instead, it reached the same result under a balancing test based on Justice Powell's concurring opinion in Arnett v Kennedy, 416 US 134, 168–169, 40 L Ed 2d 15, 94 S Ct 1633 (1974), and the Court's opinion in Mathews v Eldridge, 424 US 319, 47 L Ed 2d 18, 96 S Ct 893 (1976). App to Pet for Cert in No. 83-1362, pp A54–A57.

judicata—arg
newed here-
found that
been deprive
agreed with t
inal rational
that the com
in retaining
with the va
dence prior t
the added ac
a pretermin
561–562. Wit
deprivation c
mill's 9-mont
trative decisi
the District C
tutional viola

The dissent
respondents'
conditioned b
tions accon
thereof. He c
requirements
was a reliabl
ing of "cause
process hear
time and in
Id., at 566.

Both emplo
tiorari. Nos.
In a cross-
sought review
to him. No. 8
three petition
Ed 2d 343, 10
now affirm in

[2a] Respon

3. Of course, t
protects interest
Court of Appeals
violation was bas
of a property i
Loudermill's cont
constitutionally d
infra.

4. The relevant

judicata—arguments that are not renewed here—the Court of Appeals found that both respondents had been deprived of due process. It disagreed with the District Court's original rationale. Instead, it concluded that the compelling private interest in retaining employment, combined with the value of presenting evidence prior to dismissal, outweighed the added administrative burden of a pretermination hearing. Id., at 561–562. With regard to the alleged deprivation of liberty, and Loudermill's 9-month wait for an administrative decision, the court affirmed the District Court, finding no constitutional violation. Id., at 563–564.

**[470 US 538]**

The dissenting Judge argued that respondents' property interests were conditioned by the procedural limitations accompanying the grant thereof. He considered constitutional requirements satisfied because there was a reliable pretermination finding of "cause," coupled with a due process hearing at a meaningful time and in a meaningful manner. Id., at 566.

Both employers petitioned for certiorari. Nos. 83–1362 and 83–1363. In a cross-petition, Loudermill sought review of the rulings adverse to him. No. 83-6392. We granted all three petitions, 467 US 1204, 81 L Ed 2d 343, 104 S Ct 2384 (1984), and now affirm in all respects.

## II

**[2a]** Respondents' federal constitutional claim depends on their having had a property right in continued employment.[3] Board of Regents v Roth, 408 US 564, 576–578, 33 L Ed 2d 548, 92 S Ct 2701 (1972); Reagan v United States, 182 US 419, 425, 45 L Ed 1162, 21 S Ct 842 (1901). If they did, the State could not deprive them of this property without due process. See Memphis Light, Gas & Water Div. v Craft, 436 US 1, 11–12, 56 L Ed 2d 30, 98 S Ct 1554 (1978); Goss v Lopez, 419 US 565, 573–574, 42 L Ed 2d 725, 95 S Ct 729 (1975).

**[2b]** Property interests are not created by the Constitution, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . ." Board of Regents v Roth, supra, at 577, 33 L Ed 2d 548, 92 S Ct 2701. See also Paul v Davis, 424 US 693, 709, 47 L Ed 2d 405, 96 S Ct 1155 (1976). The Ohio statute plainly creates such an interest. Respondents were "classified civil service employees," Ohio Rev Code Ann § 124.11 (1984), entitled to retain their positions "during good behavior and efficient service," who could not be dismissed "except . . . for . . . misfeasance,

**[470 US 539]**

malfeasance, or nonfeasance in office," § 124.34.[4] The statute plainly supports the conclusion, reached by both lower courts, that respondents possessed property rights in continued employment. In-

3. Of course, the Due Process Clause also protects interests of life and liberty. The Court of Appeals' finding of a constitutional violation was based solely on the deprivation of a property interest. We address below Loudermill's contention that he has been unconstitutionally deprived of liberty. See n 13, infra.

4. The relevant portion of § 124.34 provides that no classified civil servant may be removed except "for incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, violation of such sections or the rules of the director of administrative services or the commission, or any other failure of good behavior, or any other acts of misfeasance, malfeasance, or nonfeasance in office."

deed, this question does not seem to have been disputed below.[5]

**[3a]** The Parma Board argues, however, that the property right is defined by, and conditioned on, the legislature's choice of procedures for its deprivation. Brief for Petitioner in No. 83-1363, pp 26-27. The Board stresses that in addition to specifying the grounds for termination, the statute sets out procedures by which termination may take place.[6] The

**[470 US 540]**

procedures were adhered to in these cases. According to petitioner, "[t]o require additional procedures would in effect expand the scope of the property interest itself." Id., at 27. See also Brief for State of Ohio et al. as Amici Curiae 5-10.

This argument, which was accepted by the District Court, has its genesis in the plurality opinion in Arnett v Kennedy, 416 US 134, 40 L Ed 2d 15, 94 S Ct 1633 (1974). Arnett involved a challenge by a former federal employee to the procedures by which he was dismissed. The plurality reasoned that where the legislation conferring the substantive right also sets out the procedural mechanism for enforcing that right, the two cannot be separated:

> "The employee's statutorily defined right is not a guarantee against removal without cause in the abstract, but such a guarantee as enforced by the procedures which Congress has designated for the determination of cause.
>
> . . . . .
>
> "[W]here the grant of a substantive right is inextricably intertwined with the limitations on the procedures which are to be employed in determining that right, a litigant in the position of appellee must take the bitter with the sweet." Id., at 152-154, 40 L Ed 2d 15, 94 S Ct 1633.

This view garnered three votes in Arnett, but was specifically rejected by the other six Justices. See id., at 166-167, 40 L Ed 2d 15, 94 S Ct 1633 (Powell, J., joined by Blackmun, J.,);

---

5. The Cleveland Board of Education now asserts that Loudermill had no property right under state law because he obtained his employment by lying on the application. It argues that had Loudermill answered truthfully he would not have been hired. He therefore lacked a "legitimate claim of entitlement" to the position. Brief for Petitioner in No. 83-1362, pp 14-15.

For several reasons, we must reject this submission. First, it was not raised below. Second, it makes factual assumptions—that Loudermill lied, and that he would not have been hired had he not done so—that are inconsistent with the allegations of the complaint and inappropriate at this stage of the litigation, which has not proceeded past the initial pleadings stage. Finally, the argument relies on a retrospective fiction inconsistent with the undisputed fact that Loudermill was hired and did hold the security guard job. The Board cannot escape its constitutional obligations by rephrasing the basis for termination as a reason why Loudermill should not have been hired in the first place.

6. After providing for dismissal only for cause, see n 4, supra, § 124.34 states that the dismissed employee is to be provided with a copy of the order of removal giving the reasons therefor. Within 10 days of the filing of the order with the Director of Administrative Services, the employee may file a written appeal with the State Personnel Board of Review or the Commission. "In the event such an appeal is filed, the board or commission shall forthwith notify the appointing authority and shall hear, or appoint a trial board to hear, such appeal within thirty days from and after its filing with the board or commission, and it may affirm, disaffirm, or modify the judgment of the appointing authority." Either side may obtain review of the Commission's decision in the State Court of Common Pleas.

id., at 177–178, 185, 40 L Ed 2d 15, 94 S Ct 1633 (White, J.,); id., at 211, 40 L Ed 2d 15, 94 S Ct 1633 (Marshall, J., joined by Douglas and Brennan, JJ.). Since then, this theory has at times seemed to gather some additional support. See Bishop v Wood, 426 US 341, 355–361, 48 L Ed 2d 684, 96 S Ct 2074 (1976) (White, J., dissenting); Goss v Lopez, 419 US, at 586–587, 42 L Ed 2d 725, 95 S Ct 729 (Powell, J., joined

[470 US 541]

by Burger, C. J., and Blackmun and Rehnquist, JJ., dissenting). More recently, however, the Court has clearly rejected it. In Vitek v Jones, 445 US 480, 491, 63 L Ed 2d 552, 100 S Ct 1254 (1980), we pointed out that "minimum [procedural] requirements [are] a matter of federal law, they are not diminished by the fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action." This conclusion was reiterated in Logan v Zimmerman Brush Co. 455 US 422, 432, 71 L Ed 2d 265, 102 S Ct 1148 (1982), where we reversed the lower court's holding that because the entitlement arose from a state statute, the legislature had the prerogative to define the procedures to be followed to protect that entitlement.

**[3b]** In light of these holdings, it is settled that the "bitter with the sweet" approach misconceives the constitutional guarantee. If a clearer holding is needed, we provide it today. The point is straightforward: the Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures. The categories of substance and procedure are distinct. Were the rule otherwise, the Clause would be reduced to a mere tautology. "Property" cannot be defined by the procedures provided for its deprivation any more than can life or liberty. The right to due process "is conferred, not by legislative grace, but by constitutional guarantee. While the legislature may elect not to confer a property interest in [public] employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards." Arnett v Kennedy, supra, at 167, 40 L Ed 2d 15, 94 S Ct 1633 (Powell, J., concurring in part and concurring in result in part); see id., at 185, 40 L Ed 2d 15, 94 S Ct 1633 (White, J., concurring in part and dissenting in part).

In short, once it is determined that the Due Process Clause applies, "the question remains what process is due." Morrissey v Brewer, 408 US 471, 481, 33 L Ed 2d 484, 92 S Ct 2593 (1972). The answer to that question is not to be found in the Ohio statute.

[470 US 542]

## III

An essential principle of due process is that a deprivation of life, liberty, or property "be preceded by notice and opportunity for hearing appropriate to the nature of the case." Mullane v Central Hanover Bank & Trust Co. 339 US 306, 313, 94 L Ed 865, 70 S Ct 652 (1950). We have described "the root requirement" of the Due Process Clause as being "that an individual be given an opportunity for a hearing *before* he is deprived of any significant

property interest."[7] Boddie v Connecticut, 401 US 371, 379, 28 L Ed 2d 113, 91 S Ct 780 (1971) (emphasis in original); see Bell v Burson, 402 US 535, 542, 29 L Ed 2d 90, 91 S Ct 1586 (1971). This principle requires "some kind of a hearing" prior to the discharge of an employee who has a constitutionally protected property interest in his employment. Board of Regents v Roth, 408 US, at 569-570, 33 L Ed 2d 548, 92 S Ct 2701; Perry v Sindermann, 408 US 593, 599, 33 L Ed 2d 570, 92 S Ct 2694 (1972). As we pointed out last Term, this rule has been settled for some time now. Davis v Scherer, 468 US 183, 192, n 10, 82 L Ed 2d 139, 104 S Ct 3012 (1984); id., at 200-203, 82 L Ed 2d 139, 104 S Ct 3012 (Brennan, J., concurring in part and dissenting in part). Even decisions finding no constitutional violation in termination procedures have relied on the existence of some pretermination opportunity to respond. For example, in Arnett six Justices found constitutional minima satisfied where the employee had access to the material upon which the charge was based and could respond orally and in writing and present rebuttal affidavits. See also Barry v Barchi, 443 US 55, 65, 61 L Ed 2d 365, 99 S Ct 2642 (1979) (no due process violation where horse trainer whose license was suspended "was given more than one opportunity to present his side of the story").

**[1b]** The need for some form of pretermination hearing, recognized in these cases, is evident from a balancing of the competing interests at stake. These are the private interest in

**[470 US 543]**

retaining employment, the governmental interest in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens, and the risk of an erroneous termination. See Mathews v Eldridge, 424 US 319, 335, 47 L Ed 2d 18, 96 S Ct 893 (1976).

First, the significance of the private interest in retaining employment cannot be gainsaid. We have frequently recognized the severity of depriving a person of the means of livelihood. See Fusari v Steinberg, 419 US 379, 389, 42 L Ed 2d 521, 95 S Ct 533 (1975); Bell v Burson, supra, at 539, 29 L Ed 2d 90, 91 S Ct 1586; Goldberg v Kelly, 397 US 254, 264, 25 L Ed 2d 287, 90 S Ct 1011 (1970); Sniadach v Family Finance Corp. 395 US 337, 340, 23 L Ed 2d 349, 89 S Ct 1820 (1969). While a fired worker may find employment elsewhere, doing so will take some time and is likely to be burdened by the questionable circumstances under which he left his previous job. See Lefkowitz v Turley, 414 US 70, 83-84, 38 L Ed 2d 274, 94 S Ct 316 (1973).

Second, some opportunity for the employee to present his side of the case is recurringly of obvious value in reaching an accurate decision. Dismissals for cause will often involve factual disputes. Cf. Califano v Yamasaki, 442 US 682, 686, 61 L Ed 2d 176, 99 S Ct 2545 (1979). Even where the facts are clear, the appropriateness or necessity of the discharge may not be; in such cases, the only meaningful opportunity to invoke the discretion of the decision-

7. There are, of course, some situations in which a postdeprivation hearing will satisfy due process requirements. See Ewing v Mytinger & Casselberry, Inc., 339 US 594, 94 L Ed 1088, 70 S Ct 870 (1950); North American Cold Storage Co. v Chicago, 211 US 306, 53 L Ed 195, 29 S Ct 101 (1908).

maker is lik
mination ta
Lopez, 419
2d 725, 95 S
pelli, 411 U
2d 656, 93 S
279 (1973).[8]

**[1c]** The
these consi
dents had
make that
their discha
Commission
nelly sugge
have been a
vided an o
case to the
given the
cannot say
mistaken.
the referee
ther can w
formed dec
have exercis
cided not t
standing its
any event,
arguable iss
hearing doe

8. This is no
duct is entirely
Clause is brou
Fano, 427 US
Ct 2532 (1976).
can insist on a
the decisionma
part from lega
Love, 431 US
Ct 1723 (1977).
is an entitleme
the considerat
course of actio
This is one wa
notice and inf
[employee] to
will provide a
neous action.
alerted to the e
and arguments
[H]is discretion
think the risk
Goss v Lopez, 4
725, 95 S Ct 72

maker is likely to be before the termination takes effect. See Goss v Lopez, 419 US, at 583–584, 42 L Ed 2d 725, 95 S Ct 729; Gagnon v Scarpelli, 411 US 778, 784–786, 36 L Ed 2d 656, 93 S Ct 1756, 71 Ohio Ops 2d 279 (1973).[8]

[470 US 544]

**[1c]** The cases before us illustrate these considerations. Both respondents had plausible arguments to make that might have prevented their discharge. The fact that the Commission saw fit to reinstate Donnelly suggests that an error might have been avoided had he been provided an opportunity to make his case to the Board. As for Loudermill, given the Commission's ruling we cannot say that the discharge was mistaken. Nonetheless, in light of the referee's recommendation, neither can we say that a fully informed decisionmaker might not have exercised its discretion and decided not to dismiss him, notwithstanding its authority to do so. In any event, the termination involved arguable issues,[9] and the right to a hearing does not depend on a demonstration of certain success. Carey v Piphus, 435 US 247, 266, 55 L Ed 2d 252, 98 S Ct 1042 (1978).

The governmental interest in immediate termination does not outweigh these interests. As we shall explain, affording the employee an opportunity to respond prior to termination would impose neither a significant administrative burden nor intolerable delays. Furthermore, the employer shares the employee's interest in avoiding disruption and erroneous decisions; and until the matter is settled, the employer would continue to receive the benefit of the employee's labors. It is preferable to keep a qualified employee on than to train a new one. A governmental employer also has an interest in keeping citizens usefully employed rather than taking the possibly erroneous and counterproductive step of forcing its employees onto the welfare rolls. Finally, in those situations where the employer perceives a significant hazard in

[470 US 545]

keeping the employee on the job,[10] it

8. This is not to say that where state conduct is entirely discretionary the Due Process Clause is brought into play. See Meachum v Fano, 427 US 215, 228, 49 L Ed 2d 451, 96 S Ct 2532 (1976). Nor is it to say that a person can insist on a hearing in order to argue that the decisionmaker should be lenient and depart from legal requirements. See Dixon v Love, 431 US 105, 114, 52 L Ed 2d 172, 97 S Ct 1723 (1977). The point is that where there is an entitlement, a prior hearing facilitates the consideration of whether a permissible course of action is also an appropriate one. This is one way in which providing "effective notice and informal hearing permitting the [employee] to give his version of the events will provide a meaningful hedge against erroneous action. At least the [employer] will be alerted to the existence of disputes about facts and arguments about cause and effect. . . . [H]is discretion will be more informed and we think the risk of error substantially reduced." Goss v Lopez, 419 US, at 583–584, 42 L Ed 2d 725, 95 S Ct 729.

9. Loudermill's dismissal turned not on the objective fact that he was an ex-felon or the inaccuracy of his statement to the contrary, but on the subjective question whether he had lied on his application form. His explanation for the false statement is plausible in light of the fact that he received only a suspended 6-month sentence and a fine on the grand larceny conviction. Tr of Oral Arg 35.

10. In the cases before us, no such danger seems to have existed. The examination Donnelly failed was related to driving school buses, not repairing them. Id., at 39–40. As the Court of Appeals stated, "[n]o emergency was even conceivable with respect to Donnelly." 721 F2d, at 562. As for Loudermill, petitioner states that "to find that we have a person who is an ex-felon as our security guard is very distressful to us." Tr of Oral Arg 19. But the termination was based on the presumed misrepresentation on the employment form, not on the felony conviction. In fact, Ohio law provides that an employee "shall not be disciplined for acts," including