THE AMENDED COMPLAINT

COMPLAINT FORM:

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

Your Name: BEN GYADU
        (Plaintiff)

v.

Civil No. 3:04-CV-02028 (RNC)
        (to be supplied by clerk)

Name: State Marshal Sanford Sheftel ———— 1st Defendant ⎤ Individual
        (Party(s) To Be Sued; Defendant(s))                                      ⎬ Capacity
State Marshal Robert Mulcahy ———— 2nd Defendant ⎦
Law Office Of Eugene Melchionne ———— 3rd  rv
Attorney Eugene Melchionne ———— 4th  rv

## Complaint

1. Your name and address: BEN GYADU
P.O. BOX 4314, WATERBURY, CT 06704

2. Defendant's identity and address: (E.g.s, Defendant "X"
is a U.S. Government Agency; or, Defendant "X" is a resident of
"Z")(attach additional page if necessary)
Marshal Sheftel – Marshal for State Of CT ⎫ c/o The State Marshal Commission
Marshal Mulcahy – ʺ  ʺ  ʺ  ⎬ 765 Asylum Ave.
                                                                            Hartford, CT 06105
Law Office of Eugene Melchionne – ⎫ Counsel for Bella Vista Condominium
Attorney Eugene Melchionne – ⎬ 27 First Ave; Waterbury CT 06710
CT CONDO· CONNECTION + BELLA VISTA CONDOS — CT CONDO CONNECTION is the Management Co.

3. The jurisdiction of this court is invoked pursuant to:
(list statute(s))
(I) 4TH AMEND· (II) 5TH AMEND· (III) 14TH AMEND (IV) 42 U.S.C.S. Sec. 1985(3)

4. Provide a clear and concise statement of the facts upon
which your complaint is based: (attach additional pages if
necessary) BACKGROUND

The plaintiff's Condominium

- 1 -

Association, Bella Vista Condominium", out of the blue ", replaced the legal management co., Samar y. Associates, with an ILLEGAL manage-ment co., G& W Management, in violation of the "Right Of Notice" Clause of the By-Laws of the Condominium Association

2    While this illegal management co,

5.  WHEREFORE, plaintiff demands: (state the relief you seek)

Please see attached papers

Any further relief the court deems appropriate.

DATE: 5th May, 2006    YOUR NAME: BEN· GYASU,

ADDRESS: P.O. BOX 4314,

WTBY, CT 06704

TELEPHONE:

Page 2

CONTD. —

BACKGROUND

G & W Management, was not doing the duties
required of management, causing the plaintiff
all kinds of resultant problems including false
police arrest, sanitary problems, car smoke
problems, it all the same collected condominium
fees against these duties and services it not
provide and worse yet collected even late fees
against those duties and services it did not even
provide let alone providing them late

5         When plaintiff did not pay these kinds
of fraudulent fees including a demand of
payment of fees that had already been paid
under Samary Associates, the legal management
Co., G & W Management, the Illegal management co.,
instituted against the plaintiff a hoax fore-closure

Page 3

intended just to threaten the plaintiff's mortgage bank of a loss of its investment so that the bank would interfere to make the payment and then go after the plaintiff for a refund of the payment

4    This was precisely what occured

5    The plaintiff moved to dismiss the hoax, fraudulent fore-closure action but the motion was denied without even a Memorandum of Decision, in violation of the demands of Sec. 64-1 of the CT Practice Book.

6    The plaintiff appealed that decision

7    The 3rd and the 4th defendants for Bella Vista Condos filed a Motion to Dismess, which was only to portray the plaintiff as a nuisance and dishonest litigant

Page 4

so as to turn the court against the plaintiff to achieve the desired outcome, as it did occur.

8  The Law Office of Eugene Melchionne and Attorney Eugene Melchionne stated among others ..., that the plaintiff sought fee waivers not because the plaintiff needed financial assistance but because the plaintiff wanted to create delays

9  The two counsel for Bella Vista Condos made arrangement with the Clerks of the appellate court to send copies of plaintiff's filings to their office so that they could use that to show the appellate court that the plaintiff did not send copies of his filings to their office and due to that the clerks had to mail copies of plaintiff's filings to their office

Page 5

10    Upon examining the date stamp at the back of the envelopes whose copy the Law Office Of Eugene Melchionne and Attorney Melchionne sent to the appellate court to support their claim that the plaintiff does not send copies of his filings to them and due to that the appellate court's Clerks had to send them copies of his filings, the plaintiff discovered to his utter dismay, shock and surprise that it was all a DIABOLICAL, MALICIOUS, CONCOCTED act intended to make the plaintiff appear a nuisance to turn the appellate court against the plaintiff to achieve the desired outcome, as it did occur, having no defense against the plaintiff's complaint

11    The plaintiff discovered from the date stamp of the envelopes that the state appellate court Clerks mailed

Page 6

the copies just about the same time that the plaintiff filed his papers and therefore the two referenced defendants, in their ambition to concoct anything that would make the plaintiff appear bad before the appellate court, DID NOT allow any time for plaintiff's marked copies to reach their office but chose to falsely and maliciously accuse the plaintiff of not mailing copies of his filings to them just to make the plaintiff appear a nuisance to achieve their goal or objective, as it did occur

12   The plaintiff objected emphatically to this Malicious and dishonest Motion To dismiss but the papers were returned, unfiled, as over-long.

13   While the plaintiff was in the process of bringing it down to the accepted number of pages, the State

Page 7

appellate court granted the Motion To dismiss and sanctioned the Indigent plaintiff to the payment of $8,017 to the two referenced defendants to cover their legal expenses for defending that appeal

14 The case was immediately scheduled for a pre-trial

15 At the day of the pre-trial, the court by Hon. Holzberg postponed the pre-trial upon a reason that the file was not available

16 Hon. Holzberg added that a new pre-trial would be scheduled after the file was located and that the parties would be notified of the new pre-trial date.

17 When plaintiff was expecting to receive a notice of the new pre-trial date, he rather received

Page 8

a notice of a full blown trial

18   The plaintiff moved for continuance due to the ff:

(a)      The pleadings were not closed; there was, at least, a pending "Set Off" that was supposed to be answered by the plaintiff, Bella Vista Condos. in the action: Bella Vista Condos Vs Ben. Gyadu

(b)  The defendant needed some time to look for an attorney since the trial needed legal expertise which the pro se defendant lacked

(c)  The defendant, Ben. Gyadu, needed time to get his witnesses, especially expert witnesses, ready for the trial

(d)  The defendant, BEN. GYADU, needed time to have

Page 9

his evidences ready for the unexpected trial

(e)    The defendant, BEN. GYASU, needed time to get an appraiser to appraise the Condominium

(f)    The defendant, BEN. GYASU, needed time to prepare for the unexpected "full blown" trial

19.    The 3rd and 4th defendants filed a Motion In Limine in just one working day to the trial date when (a) it had been declared that the pleadings were closed and so the case was scheduled for a "full blown" trial (b) a Motion In Limine is not even applicable to cases tried to Court, as the case : Bella Vista Condor Vs Ben. Gyadu

20.    The trial Court, however, granted this legally defective Motion In Limine without even allowing the pro se defendant any chance to file

Page 10

his much needed opposition to the Motion In limine; the trial court then used that legally defective Motion In Limine to dispose of the plaintiff's Special Defenses.

21    The Motion For Continuance was denied by the trial court at no other time and place than at the day of the scheduled trial and at the court room, to the utter shock and surprise of the defendant, Ben. Gyadu of that action: Bella Vista Condos Vs Ben. Gyadu. This was again the result of the two Counsels BAD-FAITH filings, claiming delay is plaintiff's "FORTE!"

22.    The trial court declared that the defendant had been holding-up the trial of the action with his pleadings and therefore would not grant the much needed, critical Continuance; again the result of Counsel for Bella Vista Condos.
         BAD-FAITH filing

Page 11

23  This was where the plaintiff, Bella Vista Condos, whose actions held-up about 80% of the life of the action at the time the trial Court was accusing the defendant, Ben. Gyadu, of holding-up the trial of the action, was, rather the one to be accused of holding-up the trial of the action, if anybody was to be accused of any wrong-doing

23(i)  The plaintiff, Bella Vista Condos., took 37 Consecutive months before answering the defendants Special Defenses and yet it was the defendant who was accused of holding-up the trial of the action because of the DIS-HONEST filings of Attorney Melchionne,

23(ii)  The plaintiff, Bella Vista Condos, took 4 months Extension of Time to answer the defendants Counter-claim but defaulted, causing the defendant to move for a default whose issue was not resolved

Page 12

until 5 months later by Hon. Hofzberg.

24. The trial court, after taken away every defense which the defendant had against the fraudulent for-closure action and denying the defendant the critical continuance at the very day of the trial and at the court room of the trial, the trial court then forced the pro se plaintiff to stand trial without any defense nor preparation whatsoever and worse yet at a time the pleadings had not even been closed and with that entered a pre-judgement of strict fore-closure against the defendant, as a matter of course; all the result of BAD-FAITH filings of Attorney Melchionne

25. The defendant moved to set aside the judgement as VOID but the trial court denied it forthright and so the defendant appealed it.

Step 13

26      When the Indigent defendant could not come up with
        $8,017 to pay the monetary sanctions to counsel
        of Bella Vista Condos and hence Bella Vista Condos,
        counsel moved that the State Appellate Court:

                (i) dismiss the defendants action

                (ii) barr the defendants access to
                the Appellate Court

27      The State Appellate Court granted the motion
        and so the court(i) sua sponte, dismissed the
        action along with other actions of the defendant
        including even the defendants Workers Compen-
        sation action, without their merits (ii) barred
        the defendants access to the Court for a period
        of one year.

28      The defendant, BEN. GYASU, moved to remove

Page 14

the action to the federal court pursuant
to 28 U S C S Section 1443 (1)

29    The district Court denied the removal to the utter
shock and surprise of the defendant and so
the defendant appealed the decision.

30    Just when the State Appellate Court dismissed the
action along with other defendants' actions, without
their merits except to punish the Indigent defend-
ant for his inability to come up with $8,017
to pay its monetary sanctions to Counsel for Bella Vista
Condos., the same Counsel, without any guilt or
shame of any sort, whatsoever, turned around and
a. : used the same punishment of dismissal
of the defendants actions to open the case and
Set New Law days to deprive the defendant of

Page 15

his home and property by the alleged VOID
judgement of strict fore-closure

31. The trial court, while it did not have jurisdiction
of the action pursuant to 28 USCS Section 1446,
all the same assumed jurisdiction and granted
the Motion To Open and Set New Law Days ; this
was where pending at the 2nd Circuit, was the
appeal of the denial of the removal of the
action to the District court and so the State
court equally lacked jurisdiction to grant the
Motion To Open and Set New Law Days .

32. Defendant moved to set aside the trial courts'
decision as VOID for lack of jurisdiction
pursuant to (i) 28 USCS Section 1446 (ii) the
pending appeal at the U.S. court of appeals,

Page 16

2nd Circuit.

32    On the 1st of Nov., 2001, the State trial court issued its Memorandum Of Decision denying the Motion To Set Aside for lack Of Jurisdiction, the order that Opened the case and Set New Law Days

33    This Memerandum Of Decision was filed at the Clerks' Office after 4 P.m. when it was getting to closing time at 5p.m.

34    It was not even twenty four (24) hours after the Memerandum Of Decision was filed at the Clerks' Office which issues notices of decisions, before counsel for Bella Vista Condos was somehow able to receive the NOTICE of the Memorandum when under normal circumstances counsel could not have

Page 17

35   Upon receiving the notice of the Memorandum Of
Decision, Counsel turned around and within that same
24 hours prepared the application for Ejectment
Order and hurriedly rushed down the Clerks Office
to file it so that it would be possible to issue
the Ejectment Order before the plaintiff had
any chance of receiving the notice of the Memo-
randum Of Decision and filed any papers that
would torpedoe their MALICIOUS, DIABOLICAL
plans.

36   Consequently, at the time of filing at 4:49 pm;
on the 2nd Nov, 2001, the Clerk who issues
Ejectment Orders, Attorney Maura O'Connell happened to receive the applica-
tion at the time of filing at that eleven (11)
minutes to closing time at 5p.m., ready to
just sign it to issue the Ejectment Order, without
performing the specified duties for issuing Ejectment Orders

Page 18

37   In her COLLABORATION and CONSPIRACY
     with counsel for Bella Vista Condos. to have
     an Ejectment Order on file before closing
     time at 5 p.m. and therefore within eleven
     (11) minutes of the filing of the application,
     the clerk who issues Ejectment Orders,
       Attorney Maureen O'Connell, ABANDONED
     her specified duties upon receiving the
     Memorandum Of Decision and in a rush
     issued the Ejectment Order to confer an
     absolute title of the property upon Bella
     Vista Condos FRAUDULENTLY to deprive plaintiff of
     his appeal rights.

38     After issuing the Ejectment Order
       FRAUDULENTLY and MALICIOUSLY, as alleged,
     it became FUTILE for plaintiff to exercise
     his appeal rights upon receiving the notice of the
     Memorandum Of Decision to attempt to retain the title of the property.

Page 19

**39**

With the Ejectment Order issued, even though it was FRAUDULENT and UNLAWFUL, Counsel for Bella Vista Condos had what they needed in order to Eject the plaintiff from his home and property at any time of their choice

**40**

Consequently, Counsel for Bella Vista Condos, faced with a dead-line of 4th Dec., 2001, for answering the plaintiff's Complaint for Injunctive Relief and the dead-line of 14th Dec., 2001, for filing the appellee Brief at the 2nd Circuit Court of appeals, N.Y., N.Y., decided to make the State Marshal to serve plaintiff with the FRAUDULENT, UNLAWFUL Ejectment Order and throw the plaintiff out of his home and property onto the streets, homeless, in the Cold Winter, BEFORE the time

Page 20

for filing the afore-mentioned papers ran
out and risked a resultant penalty.

41  This was precisely what occured

42  The plaintiff came back home one evening
to find the UNLAWFUL, MALICIOUS, FRAUDU-
LENT Ejectment Order at his door

43. This DELIBERATE WICKED, CALLEOUS, MALI-
CIOUS, DIABOLICAL act done with MALICIOUS
intent, would NEVER have been possible but
                    to CONSPIRE & COLLABORATE with Maura O'Connell
for the defendants over ambition to flout every
single law in her way of issuing the Ejectment
Order and deprive the plaintiff of his appeal
rights so that it would be possible to throw
the plaintiff out of his home and property onto the
streets, homeless, and take possession of the property,

Page 21

in WANTON DIS-REGARD to the plaintiff's CONSTITUTIONAL rights.

44  According to the Ejectment Order the plaintiff was supposed to vacate his home and property for twelve and half (12.5) consecutive years within just nine (9) days at 8 a.m. on the 30th of Nov, 2001, regardless of the fact that
(i) the judgement was VOID and its appeal was yet to be exercised (ii) the counter-claim of the very action was still pending (iii) the litigation had not come to a close and was still in progress (iv) the Ejectment Order was LAWLESS and FRAUDULENT

45  On the 17th of Nov, 2001, the house was set

Page 22

on fire in the afternoon while the plaintiff was in the house having a siesta.

46   The plaintiff suddenly found himself wide awake from his sleep by the fire-alarm, engulfed by the heavy smoke of the fire.

47   The plaintiff rushed out of the smoke engulfed building, grobbing his way through the cloud of smoke

48   When plaintiff got out of the building, he called the fire service and the neighbours for help to put out of the fire.

49   The fire service rushed to the house and with the help of the neighbours the fire was put out